LIBERTY MUTUAL INSURANCE COMPANY v ALLIED TRUCK
EQUIPMENT COMPANY

ROYAL GLOBE INSURANCE COMPANY v ALLIED TRUCK
EQUIPMENT COMPANY

Docket Nos. 45948, 45949, 46018, 46019. Submitted June 2, 1980, at
Grand Rapids.—Decided January 21, 1981.

An auxiliary gasoline tank on a truck owned by Gerald K.
Sterling and insured by Aetna Casualty & Surety Company was
being repaired by Allied Truck Equipment Company when
dripping gasoline started a fire which destroyed Sterling's truck
and Allied's building and damaged other trucks on the prem-
ises. Liberty Mutual Insurance Company and Royal Globe
Insurance Company, insurers for the other trucks damaged in
the fire and subrogees of the owners of those trucks, each
brought an action against Allied and Aetna seeking damages
for the respective trucks which were damaged while at Allied
for repairs. Motions for summary judgment were filed. The
Kent Circuit Court, George R. Cook, J., granted summary
judgments in favor of Aetna in both actions, granted summary
judgment in favor of Liberty Mutual against Allied and granted
summary judgment in favor of Royal Globe against Allied. The
court found Allied liable to Liberty Mutual in the amount of
$17,263.37 plus costs and interest and to Royal Globe in the
amount of $11,860 plus costs and interest. All the parties
except Aetna appealed. The appeals were consolidated. On
appeal, the sole question is whether the trial court was correct ·

REFERENCES FOR POINTS IN HEADNOTES

[1] 73 Am Jur 2d, Statutes § 97.

[2, 5] 38 Am Jur 2d, Garages, and Filling and Parking Stations §§ 28-
34.

Liability for loss of or damage to automobile left in parking lot or
garage. 7 ALR3d 927.

[3] 7 Am Jur 2d (Rev), Automobile Insurance §§ 351, 366.

[4] 7 Am Jur 2d (Rev), Automobile Insurance § 194.

Automobile liability insurance: what are accidents or injuries "aris-
ing out of ownership, maintenance, or use" of insured vehicles. 89
ALR2d 150.

[6] 73 Am Jur 2d, Statutes § 313.

in its determination that liability under these circumstances is governed by the garage keepers' liability act rather than the no-fault insurance act. *Held:*

Liability for damages to a motor vehicle damaged by fire while such vehicle was in the possession of a garage keeper for the purpose of repairs is governed by the garage keepers' liability act rather than the no-fault insurance act. While a vehicle under those circumstances may come within the "maintenance" provision of the no-fault insurance act, to hold that the no-fault insurance act governs under such circumstances would eviscerate the garage keepers' liability act and thereby extend the effect of the no-fault insurance act beyond that which the Legislature intended.

Affirmed.

1. STATUTES — TITLE OF ACT — OBJECT OF ACT.

The title of an act, while not part of the act, may be considered as an expression of the act's object and purpose.

2. BAILMENTS — AUTOMOBILES — GARAGE KEEPERS — NEGLIGENCE — PRESUMPTIONS — STATUTES.

The garage keepers' liability act creates a rebuttable presumption that damage to a motor vehicle while in the control of a garage keeper is due to the negligence of the garage keeper (MCL 256.541 *et seq.;* MSA 9.1721 *et seq.).*

3. INSURANCE — NO-FAULT INSURANCE — AUTOMOBILES — APPLICABILITY OF COVERAGE — STATUTES.

A determination of the applicability of property protection coverage under the no-fault insurance statute requires examination of the nature of the damage incurred and the circumstances under which the damage arose (MCL 500.3121; MSA 24.13121).

4. INSURANCE — NO-FAULT INSURANCE — AUTOMOBILES — MAINTENANCE OF MOTOR VEHICLE — CAUSAL CONNECTION.

The provisions of the no-fault insurance act relative to claims for damages arising out of the maintenance of a motor vehicle apply only where there is established a causal connection between the damages incurred and the maintenance of the vehicle.

5. AUTOMOBILES — INSURANCE — NO-FAULT INSURANCE — BAILMENTS — GARAGE KEEPERS' LIABILITY — STATUTES.

Liability for damages to a motor vehicle damaged by a fire while such vehicle is in the possession of a garage keeper for the purpose of repairs is governed by the garage keepers' liability

act rather than by the no-fault insurance act, there being no indication that the Legislature intended to alter the law of bailment for hire by the enactment of the no-fault insurance act (MCL 256.541 *et seq.*, 500.3101 *et seq.*; MSA 9.1721 *et seq.*, 24.13101 *et seq.*).

6. STATUTES — LEGISLATURE — PRESUMPTIONS — COURTS — STATUTORY CONSTRUCTION.

The Legislature is presumed to know the existing law and to legislate in harmony with it; however, courts may imply exceptions to statutes because legislators do not always use language with mathematical accuracy.

*Smith, Haughey, Rice & Roegge* (by *Craig R. Noland*), for Royal Globe Insurance Company and Liberty Mutual Insurance Company.

*Baxter & Hammond* (by *Richard B. Baxter, J. Richard Peterson* and *Michael D. Wade*), for Aetna Casualty & Surety Company.

*Allaben, Massie, Vander Weyden & Timmer,* for Allied Truck Equipment Company.

Before: R. B. BURNS, P.J., and MACKENZIE and J. T. KALLMAN,* JJ.

J. T. KALLMAN, J. Defendant Allied Truck Equipment Company appeals as of right after summary judgment against it was entered by Kent County Circuit Court Judge George R. Cook on June 15, 1979. Plaintiffs Liberty Mutual Insurance Company and Royal Globe Insurance Company filed separate appeals as of right.

These consolidated cases involve a dispute over insurance for losses to motor vehicles resulting from a fire on March 9, 1974, at Allied's garage in Wyoming, Michigan. The parties are: Allied Truck Equipment Company, a truck body business that

* Circuit judge, sitting on the Court of Appeals by assignment.

installs auxiliary equipment; Gerald K. Sterling, owner of a truck which was destroyed while repair work was being performed on its auxiliary gas tank; Aetna Casualty & Surety Company, the insurer of Sterling's truck; and Royal Globe Insurance Company and Liberty Mutual Insurance Company, subrogees of the owners of trucks which were damaged in the fire.

There is no dispute over the facts surrounding the outbreak of the fire. On March 4, 1974, Sterling left his three-quarter ton GMC pickup truck for Allied to install a 50-gallon auxiliary gas tank in the bed of the pickup, behind the cab. Allied's employees selected and installed a tank and connecting parts. Allied did not test the tank's performance.

Sterling picked up the truck but returned the following day, complaining that the auxiliary tank caused the carburetor to flood.

On March 5, 1974, Allied's service manager attempted to solve the problem by raising a component switch. Sterling picked up his truck that evening but returned it the following day, complaining that the problem had not been resolved.

On March 9, 1974, Allied's service manager planned to install a new line within the auxiliary tank to correct the problem. He crawled under the truck and removed a plug from a vent line at the bottom of the auxiliary tank. Gasoline dripped from the line, hit the floor, then splashed on the bare bulb in a trouble light that had been placed under the truck. The gasoline immediately burst into flames. A mechanic pulled the service manager from beneath the truck, and the two attempted to subdue the fire. They succeeded in extinguishing the flames, but the fire broke out

again. The fire burned out of control, destroying
Sterling's truck and Allied's building and damag-
ing trucks insured by Royal Globe and Liberty
Mutual.

Liberty Mutual and Royal Globe sued Allied and
Aetna, seeking damages for vehicles that had been
given to Allied for repair but which were damaged
in the fire.

Aetna filed a motion for summary judgment on
March 11, 1977, in all three cases. That motion
was based on this Court's holding that the prop-
erty protection provisions of the no-fault insurance
act were unconstitutional. *Shavers v Attorney
General,* 65 Mich App 355; 237 NW2d 325 (1975).
The trial court deferred ruling on that motion
until the Supreme Court decided the *Shavers* ap-
peal.

Aetna filed an application for leave to appeal
the trial court's decision to defer ruling. In support
of its application, Aetna's attorneys drafted a con-
solidated statement of facts, which stated the fire
was accidental and arose during the maintenance
of Sterling's truck. Leave to appeal was denied in
an order dated October 28, 1977. In an opinion
dated May 18, 1979, the trial court found the
Legislature intended liability in bailment situa-
tions to be governed by the garage keepers' liabil-
ity act, MCL 256.541 *et seq.;* MSA 9.1721 *et seq.,*
and not by the no-fault insurance act, MCL
500.3101 *et seq.;* MSA 24.13101 *et seq.* The court
examined the purposes of each act and found that
the no-fault insurance act was intended to apply
only in situations where there is some causal
connection between the vehicle, its owner or oper-
ator, and the loss. In orders dated June 15, 1979,
the court granted partial summary judgment in
Aetna's favor and found Allied liable to Royal

Globe for $11,860 plus costs and interest and to Liberty for $17,263.37 plus costs and interest.

We are now asked to decide whether the no-fault insurance act or the garage keepers' liability act should control when a fire occurs in the course of a garage keeper's work on a vehicle insured under the no-fault insurance act. The garage keepers' liability act, passed in 1919, established a rebuttable presumption that whenever any motor vehicle was damaged while in the possession or under the control of a person who stored or repaired vehicles for profit, that damage was due to the negligence of that person. The purpose of that act was stated as:

"AN ACT to protect the owners of motor vehicles, entrusting the same for any purpose, the care, custody or control of the owner or keeper of a public garage or other establishment where such motor vehicles are so accepted for hire or gain." 1919 PA 391.

While this title is not part of the statute, we may consider it as expressing the act's object and purpose. *In re Chamberlain's Estate,* 298 Mich 278, 281; 299 NW 82 (1941).

This presumption, when considered with the common law of bailments, afforded motor vehicle owners protection against damages incurred while the garage keeper was in control of the automobile. See *Loving v Howard Lare, Inc,* 344 Mich 97, 99; 73 NW2d 290 (1955). Clearly, the terms of the garage keepers' liability act apply in the instant situation.

Allied argues, however, that the no-fault insurance act's property protection provisions—not the garage keepers' liability act—should govern.

The goal of the no-fault insurance act is "to provide victims of motor vehicle accidents assured,

adequate, and prompt reparation for *certain* economic losses". (Emphasis added.) *Shavers v Attorney General,* 402 Mich 554, 579; 267 NW2d 72 (1978). The act does not purport to compensate accident victims for *all* economic losses.

The no-fault insurance act provides, in pertinent part:

"(1) Under property protection insurance an insurer is liable to pay benefits for accidental damage to tangible property arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle subject to the provisions of this section and sections 3123, 3125 and 3127.

"(2) Property protection insurance benefits are due under the conditions stated in this chapter without regard to fault.

"(3) Damage to tangible property consists of physical injury to or destruction of the property and loss of use of the property so injured or destroyed.

"(4) Damage to tangible property is accidental, as to a person claiming property protection insurance benefits, unless it is suffered or caused intentionally by the claimant. Even though a person knows that damage to tangible property is substantially certain to be caused by his act or omission, he does not cause or suffer such damage intentionally if he acts or refrains from acting for the purpose of averting injury to any person, including himself, or for the purpose of averting damage to tangible property." MCL 500.3121; MSA 24.13121.

It is necessary to examine the nature of the injury and the circumstances under which it arose to determine the applicability of the no-fault insurance statute. *Belcher v Aetna Casualty & Surety Co,* 409 Mich 231; 293 NW2d 594 (1980). The damage is not alleged to have been intentionally caused, so it must be regarded as accidental. The building and three motor vehicles destroyed are tangible property within the meaning of the act. A

closer look is required to determine whether the accident arose out of the maintenance of a motor vehicle. "Maintenance" is defined in Webster's New Collegiate Dictionary as "keeping in an existing state". While the installation of an auxiliary gas tank might arguably fall outside this strict definition, Allied was correcting a carburetor flooding problem when the accident occurred, so we find the acts of Allied constitute maintenance of the vehicle. See, for example, *Miller v Auto-Owner's Ins Co,* 92 Mich App 263; 284 NW2d 525 (1979), where a determination that installation of shock absorbers constituted "maintenance" was not challenged.

Finally, the accident must arise out of the maintenance of a vehicle for the no-fault insurance act to apply. Michigan courts have required a causal connection to be established between the injuries and the maintenance of the vehicle. This connection need not approach proximate cause. *Shinabarger v Citizens Mutual Ins Co,* 90 Mich App 307, 313-314; 282 NW2d 301 (1979), *Kangas v Aetna Casualty & Surety Co,* 64 Mich App 1, 17; 235 NW2d 42 (1975).

In the instant case, we are unable to find the necessary causal connection. At the time of the fire, the vehicle was in the care and custody of a bailee and the fire occurred as a result of the negligent act of the bailee in placing an exposed light bulb in a position where gasoline could fall on it. We find the accident arose out of the bailment for hire—not out of the maintenance of the motor vehicle within the meaning of the no-fault insurance act.

While a strong argument may be made that the accident arose out of the maintenance of the vehicle within the meaning of the no-fault insurance act, we feel constrained to hold that, whenever a

bailment-for-hire situation is presented, it is the bailment of the vehicle and not the maintenance of the vehicle that governs. To hold otherwise would unnecessarily eviscerate the garage keepers' liability act and would extend no-fault insurance coverage beyond what we believe the Legislature intended. The garage keepers' liability act protects a vehicle owner from property damages inflicted on the vehicle while in the care and custody of a bailee for hire. The no-fault insurance act, if applicable to a bailment situation, would render that presumption in the garage keepers' liability act meaningless. We cannot find that the Legislature intended to alter the common law of bailments for hire so drastically when it enacted the no-fault insurance act.

We recognize that the Legislature provided three exceptions when it abolished tort liability for property damage in the no-fault insurance act and that none of these provisions involves a bailment situation. MCL 500.3135; MSA 24.13135. We note, however, that the Legislature is presumed to know the existing law and to legislate in harmony with it. *People v Harrison,* 194 Mich 363, 369; 160 NW 623 (1916). We also note that exceptions may be implied because legislators do not always use language with mathematical accuracy. *People on the Relation of Kennedy v Wayne County Treasurer,* 25 Mich 83, 85 (1872). Here, where we do not find that the Legislature exhibited a clear intent to drastically alter the common law of bailments for hire, we are unwilling to find that the no-fault insurance act did so.

We therefore affirm the trial court's determination that the garage keepers' liability act governed in the instant situation.

Affirmed.