BUCKEYE UNION INSURANCE COMPANY v JOHNSON

HOME INSURANCE COMPANY v JOHNSON

Docket No. 48721, 49891. Submitted October 8, 1980, at Grand Rapids.—Decided July 27, 1981. Leave to appeal applied for.

Olen Morgan, owner of a truck, took the truck to Kenneth E. Johnson, doing business as Johnson Ford, for repair of a fuel line. During the course of repair, fuel hit a light bulb, exploded, and ignited a fire causing extensive damage. Buckeye Union Insurance Company, Home Insurance Company, and several other insurers who paid claims for damages resulting from the fire, mostly damages to nearby buildings and their contents, brought actions as subrogees of their insureds against Johnson and against United Security Insurance Company, the no-fault insurer of Morgan's truck. Murphy Oil Corporation brought a separate action which was consolidated with those of the insurers. The Kent Circuit Court, George R. Cook, J., granted summary judgments in favor of United Security. The plaintiffs appealed and the appeals were consolidated. *Held:*

1. A sufficient causal connection existed between the maintenance of the truck and the damage caused by the fire such that it may be said that the damage arose out of the maintenance within the meaning of the no-fault automobile insurance statute. The alleged negligence of the dealership and its mechanic, while it may be viewed as an independent cause, does not defeat the otherwise established causal connection.

2. The garage keepers' liability act does not apply where it clearly can be said that the damage arose out of the maintenance of a motor vehicle. The presumption of negligence on the part of the garage keeper which is imposed by the garage keepers' liability act has no meaning in a no-fault system. That

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 7 Am Jur 2d (Rev), Automobile Insurance § 194.
   Validity and construction of "no-fault" automobile insurance plans. 42 ALR3d 229.
   Automobile liability insurance: what are accidents or injuries "arising out of ownership, maintenance, or use" of insured vehicles. 89 ALR2d 150.
[3, 4] 7 Am Jur 2d (Rev), Automobile Insurance § 223.

act, therefore, cannot supersede the no-fault act in cases where the no-fault act applies.

Reversed and remanded.

R. B. BURNS, J., dissented. He would hold that in a bailment-for-hire situation the bailment of the vehicle governs, not the maintenance of the vehicle. Thus, the garage keepers' liability act, and not the no-fault act, applies. He would affirm.

### OPINION OF THE COURT

1. INSURANCE — AUTOMOBILES — NO-FAULT INSURANCE — STATUTES.

   The term "arising out of" the maintenance of a motor vehicle as used in the no-fault automobile insurance act does not require as strict a showing of causation of damage to property as does the concept of proximate cause; the relationship between the maintenance and the damage must, however, be more than incidental, fortuitous, or "but for" (MCL 500.3121[1]; MSA 24.13121[1]).

2. INSURANCE — AUTOMOBILES — NO-FAULT INSURANCE — STATUTES.

   A sufficient causal connection between the maintenance of a vehicle and damages "arising out of" that maintenance is established if the injury is foreseeably identifiable with the normal maintenance of a motor vehicle and, if maintenance of the motor vechile is one of the causes, a sufficient causal connection exists even if there are other, independent causes (MCL 500.3121[1]; MSA 24.13121[1]).

3. AUTOMOBILES — MAINTENANCE OF MOTOR VEHICLES — GARAGE KEEPERS' LIABILITY ACT — STATUTES.

   The garage keepers' liability act should not be used to defeat the causal connection between the maintenance of a motor vehicle and damage which clearly arises out of that maintenance (MCL 256.541 et seq.; MSA 9.1721 et seq.).

### DISSENT BY R. B. BURNS, J.

4. AUTOMOBILES — MAINTENANCE OF MOTOR VEHICLES — BAILMENTS — STATUTES.

   *The bailment of a vehicle, and not the maintenance of the vehicle, governs whenever damages result from maintenance work on a vehicle in a bailment-for-hire situation; the garage keepers' liability act therefore controls such a case, not the no-fault automobile insurance act (MCL 256.541 et seq., 500.3121[1]; MSA 9.1721 et seq., 24.13121[1]).*

*Baxter & Hammond* (by *Phillip J. Nelson* and

*Robert N. Alt, Jr.),* for Buckeye Union Insurance Company.

*Smith, Haughey, Rice & Roegge* (by *Lance R. Mather),* for Home Insurance Company, Hartford Insurance Company, American States Insurance Company, Citizens Mutual Insurance Company, Fremont Mutual Insurance Company, and Frankenmuth Mutual Insurance Company.

*Linsey, Strain & Worsfold, P.C.* (by *Dale M. Strain),* for United Security Insurance Company.

Before: R. M. MAHER, P.J., and R. B. BURNS and D. F. WALSH, JJ.

R. M. MAHER, P.J. Plaintiffs in these consolidated cases appeal the order of the trial court granting summary judgment in favor of defendant United Security Insurance Company.

On November 27, 1974, the fuel line connecting the main and auxiliary fuel tanks on a truck belonging to Olen Morgan was cut by an unknown person. Morgan took the truck to a Ford dealer, Kenneth Johnson, who was doing business as Johnson Ford in Sparta, Michigan. Repairs were completed and Morgan picked up the truck. Fuel was not properly flowing between the two tanks, however, so Morgan returned the truck to the dealer for further repairs on December 2 or 3, 1974. A mechanic got under the truck with a trouble light in order to check on the problem. He planned to disconnect the fuel line, directing the fuel into a bucket. Unfortunately the fuel squirted past the bucket and hit the light bulb, causing the fuel to explode and ignite a fire that ultimately caused several hundred thousand dollars worth of damages.

Plaintiffs are insurance companies who paid claims for damages resulting from the fire. Most of the claims were for damage to nearby buildings and their contents, although two of the claims were for damage to motor vehicles at the dealership. Plaintiffs brought suit, as subrogees of their insureds, against the dealership alleging negligence on the part of its employees, and additionally sued defendant United Security Insurance Company, the no-fault insurer of Morgan's truck, alleging that the losses resulting from the fire were covered under Morgan's policy with United. In each case the plaintiffs were seeking to recover, as subrogees of the individual insureds, the amounts they had paid in claims.

United brought a motion for summary judgment on the basis that it was not liable as a matter of law. The motion was granted and plaintiffs have appealed.

Section 3121(1) of the no-fault automobile insurance act provides in part as follows:

"Under property protection insurance an insurer is liable to pay benefits for accidental damage to tangible property arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle * * *." MCL 500.3121(1); MSA 24.13121(1).

In the instant case it is not disputed that the damage was to tangible property or that it was accidental. Instead, the issue is whether the damage arose out of the maintenance of a motor vehicle as a motor vehicle. Clearly, Morgan's truck was being maintained at the time of the accident. It is difficult to imagine a clearer example of maintenance of a motor vehicle as a motor vehicle. Work was being undertaken to correct a problem in the fuel line between two fuel tanks, work that was clearly related to the truck's characteristics as a motor vehicle. Cf. *Kudek v Detroit Automobile Inter-Ins Exchange,* 100 Mich App 635, 637; 300

NW2d 350 (1980), *Miller v Auto-Owners Ins Co,* 92
Mich App 263; 284 NW2d 525 (1979), *lv gtd* 408
Mich 897 (1980).* Contrary to defendant's sugges-
tion, the statute in no way requires that the
maintenance be done personally by the policy
holder. *Cf. Kudek, supra.* It is also clear, however,
that a sufficient causal nexus must exist between
the maintenance and the damage such that it may
be said the damage *arose out of* the maintenance.
In this regard defendant argues that the accident
did not arise out of the maintenance, but out of
the intervening negligence of the dealer and its
mechanic. This misses the point. While the inter-
vening negligence of one party may be sufficient to
defeat a claim that another party's negligence was
the proximate cause of an accident in a fault-based
system, the term "arising out of" does not require
as strict a showing of causation as does the con-
cept of proximate cause. *Shinabarger v Citizens
Mutual Ins Co,* 90 Mich App 307, 313-314; 282
NW2d 301 (1979), *lv den* 407 Mich 895 (1979),
*Kangas v Aetna Casualty & Surety Co,* 64 Mich
App 1, 17; 235 NW2d 42 (1975), *lv den* 395 Mich
797 (1975). The relationship between the mainte-
nance and the damage must, however, be more
than incidental, fortuitous, or but for. *Detroit
Automobile Inter-Ins Exchange v Higginbotham,*
95 Mich App 213, 222; 290 NW2d 414 (1980), *lv
den* 409 Mich 919 (1980), *Kangas, supra,* 17. It is
not sufficient that the motor vehicle is merely the
site of the accident. *Shinabarger, supra,* 314. A
sufficient causal connection is established, how-
ever, if the injury is foreseeably identifiable with
the normal maintenance of a motor vehicle. *Hig-
ginbotham, supra,* 222, *Kangas, supra,* 17. If main-

---

* Reversed by the Supreme Court September 1, 1981, 411 Mich 633;
309 NW2d 544—Reporter.

tenance of a motor vehicle is one of the causes, a sufficient causal connection exists even though there are independent causes. *Shinabarger, supra,* 313.

Based on these principles, we hold that a sufficient causal connection existed in the instant case between the maintenance of Morgan's truck and the damage which resulted. The damage arose directly out of the work being done on Morgan's truck. While the alleged negligence of the dealership and its mechanic might be seen as an independent cause, this does not defeat the otherwise established causal connection. Accordingly, under the no-fault act, United would be liable for the damage based on its policy with Morgan.

United also argues, however, that the no-fault act was not intended to displace well-established principles concerning the liability of garage keepers. In support of this position is this Court's recent decision in *Liberty Mutual Ins Co v Allied Truck Equipment Co,* 103 Mich App 33; 302 NW2d 588 (1981), where the facts were strikingly similar to those in the instant case. In *Liberty Mutual* Gerald K. Sterling brought his truck to the Allied Truck Equipment Company for the installation of an auxiliary fuel tank. The tank was installed but did not function properly, so Sterling returned the truck to Allied. Repairs were made but Sterling returned the truck a second time complaining that the problem still had not been resolved. This time the service manager crawled under the truck to examine the auxiliary tank's fuel line. While working underneath the truck, fuel dripped from the line, hit the floor, and splashed on the bulb of a trouble light. The fuel ignited, resulting in a fire which destroyed Allied's building and several trucks which had been left with Allied for repairs.

Insurers of the damaged trucks brought suit against Allied and Aetna Casualty & Surety Company, the no-fault insurer of Sterling's truck, seeking to recover the money they had paid to their insureds. The trial court granted partial summary judgment in favor of Aetna, holding that the garage keepers' liability act, MCL 256.541 *et seq.;* MSA 9.1721 *et seq.,* controlled and not the no-fault act. Accordingly, the trial court held the garage keeper, Allied, liable to the plaintiff insurance companies.

On appeal, this Court examined both the garage keepers' liability act and the property protection provisions of the no-fault act and concluded that the damage did not arise out of the maintenance of a motor vehicle, but out of a bailment for hire. The Court continued:

"While a strong argument may be made that the accident arose out of the maintenance of the vehicle within the meaning of the no-fault insurance act, we feel constrained to hold that, whenever a bailment-for-hire situation is presented, it is the bailment of the vehicle and not the maintenance of the vehicle that governs. To hold otherwise would unnecessarily eviscerate the garage keepers' liability act and would extend no-fault insurance coverage beyond what we believe the Legislature intended. The garage keepers' liability act protects a vehicle owner from property damages inflicted on the vehicle while in the care and custody of a bailee for hire. The no-fault insurance act, if applicable to a bailment situation, would render that presumption in the garage keepers' liability act meaningless. We cannot find that the Legislature intended to alter the common law of bailments for hire so drastically when it enacted the no-fault insurance act." *Liberty Mutual,* *supra,* 40-41.

After careful analysis, we do not believe that the

gargage keepers' liability act should control the
disposition of the instant case. The garage keepers'
liability act is a short piece of legislation which
sets up certain presumptions concerning damage
to automobiles left with a garage keeper. Gener-
ally, and as applicable to the instant case, the act
provides that proof of damage to an automobile in
the possession, care, custody, or control of a garage
keeper is prima facie evidence that the damage
was due to the negligence of the garage keeper.
Accordingly, we do not perceive how that act
would apply to the bulk of the claims in the
instant case, which involve damage to property
with no legal connection to the garage. The act is
clearly designed to protect the owners of vehicles
who entrust their vehicles to a garage keeper.
There is no expression of legislative intent that
the act also be used in some manner to determine
the interests of owners of buildings or other forms
of property with no connection to the garage other
than geographic proximity. The no-fault act, on
the other hand, is not so limited and applies to all
forms of tangible property. Accordingly, where it
clearly can be said that the damage arose out of
the maintenance of a motor vehicle the garage
keepers' liability act should not be used to artifi-
cially defeat this causal connection, at least as to
owners of property other than motor vehicles
which were entrusted to the garage keeper.

This does not end matters since at least two of
the claims in the instant case concern damage to
vehicles entrusted to the dealership and since
*Liberty Mutual* could be read as holding that the
no-fault act does not apply to damage to any sort
of property which results from an accident such as
that in the instant case. In this regard we respect-
fully suggest that *Liberty Mutual* was wrongly
decided. The garage keepers' liability act is princi-

pally designed to set up certain presumptions of negligence applicable to a fault-based theory of recovery. The no-fault act, on the other hand, is clearly designed to replace a fault-based system for claims of property damage with a sufficient causal connection to the maintenance of a motor vehicle. That causal connection, once established, controls despite the existence of other, independent causes. *Shinabarger, supra.* While the garage keepers' liability act would set up a presumption of negligence on the part of the dealership (at least as to claims on behalf of the owners of motor vehicles entrusted to the dealership), that presumption is meaningless in a no-fault system. Accordingly, the garage keepers' liability act cannot logically supersede the no-fault act in cases where the no-fault act applies.

The Court in *Liberty Mutual* was obviously concerned that a holding such as ours in the instant case would effectively destroy the garage keepers' liability act. This is not necessarily the case. In cases where the causal connection between the ownership, operation, maintenance, or use of a motor vehicle and damage to a motor vehicle entrusted to a garage keeper is insufficient to invoke the operation of the no-fault act the parties will be cast back into a fault-based system of recovery and the presumptions set up in the garage keepers' liability act will be in full force. In cases where the causal connection is established, however, we can only conclude that the Legislature intended the no-fault act (which was enacted well after the garage keepers' liability act) to apply notwithstanding fault-based concepts such as those involved in the garage keepers' liability act.

The trial court erred in granting summary judgment in favor of defendant United Security Insur-

ance Company. This cause is remanded to the trial court for further proceedings on plaintiffs' complaints consistent with this opinion.

Reversed and remanded.

D. F. WALSH, J., concurred.

R. B. BURNS, J. *(dissenting)*. I respectfully dissent for the reasons set forth in *Liberty Mutual Ins Co v Allied Truck Equipment Co,* 103 Mich App 33; 302 NW2d 588 (1981).