MICHIGAN BASIC PROPERTY INSURANCE ASSOCIATION v
MICHIGAN MUTUAL INSURANCE COMPANY

Docket No. 61308. Submitted October 6, 1982, at Detroit.—Decided
January 10, 1983.

John Desgrange, an employee of an auto body shop called
Thomas Coaches of Eastern Michigan, Inc., was replacing the
stock exhaust system on his car with high performance headers
because of the deteriorated condition of the stock exhaust
system and because the headers were less expensive to buy and
install than replacing the stock system. Desgrange was doing
the work on the premises of Thomas Coaches on his own time
and with the permission of his employer. Desgrange, while
using a torch, accidentally started a fire which did more than
$67,000 damage to the property of Thomas Coaches. Michigan
Basic Property Insurance Association, Thomas Coaches' in-
surer, paid for the damage and filed suit against Desgrange and
Michigan Mutual Insurance Company, Desgrange's no-fault
automobile insurer, in Oakland Circuit Court claiming that
Michigan Mutual was liable for the damages. The court, Fran-
cis X. O'Brien, J., granted summary judgment in favor of
plaintiff. Defendant Michigan Mutual appeals. *Held:*

1. The fire damage arose out of the maintenance of the
insured vehicle. Therefore, the damage is covered by the no-
fault automobile insurance act.

2. There can be no distinction between replacing deteriorated
stock parts on an automobile with replacement stock parts or
with nonstock parts as long as the original parts must be
replaced. The term "maintenance" in the no-fault automobile
insurance act encompasses replacement of stock parts with

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 7 Am Jur 2d, Automobile Insurance §§ 135, 349.
    Validity and construction of "no-fault" automobile insurance plans.
        42 ALR3d 229.
[3] 7 Am Jur 2d, Automobile Insurance § 349.
7 Am Jur 2d, Automobile Insurance §§ 357, 366.
    Automobile insurer's liability for statutory excess interest for de-
        layed payment of no-fault claim. 14 ALR4th 761.

nonstock parts where replacement of the original stock parts is necessary.

3. Because Desgrange was working on his own car, and not a customer's, the garage keeper's liability act is inapplicable.

4. Plaintiff is not entitled to interest under the no-fault act on its judgment against Michigan Mutual. The interest section of the no-fault act applies to judgments for personal protection insurance benefits, not to property protection benefits. However, plaintiff is entitled to the normal statutory interest on judgments.

Affirmed.

1. Words and Phrases — "Maintenance" — Insurance — No-Fault Insurance.

The term "maintenance" as used in the "ownership, maintenance, use" clause of the no-fault automobile insurance act covers the act of repairing the covered automobile; injuries incurred or property damage caused in the course of repairing an insured vehicle are therefore covered by the act (MCL 500.3121[1]; MSA 24.13121[1]).

2. Insurance — No-Fault Insurance — Maintenance of Automobiles — Stock Parts.

The Legislature, in enacting the maintenance provision of the no-fault automobile insurance act, did not intend that there be a differentiation between replacement of original parts of automobiles with stock parts and replacement with other than stock parts (MCL 500.3121[1]; MSA 24.13121[1]).

3. Insurance — No-Fault Insurance — Garage Keeper's Liability Act — Property Damage.

The garage keeper's liability act does not apply in a case where an employee of the garage keeper is repairing his own automobile on his own time and with the garage keeper's permission and accidentally causes property damage to the premises; in such a case, the no-fault insurer of the employee's automobile is liable for the damages under the maintenance provision of the no-fault act (MCL 256.541 et seq., 500.3121[1]; MSA 9.1721 et seq., 24.13121[1]).

4. Insurance — Interest — Personal Protection Insurance Benefits — Property Protection Benefits.

The interest provision of the no-fault automobile insurance act applies only to judgments for personal protection insurance benefits, not to property protection benefits; interest on judgments for property protection benefits is provided by the stat-

ute governing interest on money judgments (MCL 500.3142, 600.6013; MSA 24.13142, 27A.6013).

*Goldstein, Serlin, Grass & Eserow, P.C.* (by *Jack Eserow* and *Barry M. Rosenbaum*), for plaintiff.

*Tyler & Canham, P.C.* (by *David M. Tyler* and *Michael J. Walter*), for defendant.

Before: DANHOF, C.J., and N. J. KAUFMAN and D. C. RILEY, JJ.

N. J. KAUFMAN, J. John Desgrange was employed by Thomas Coaches as an autobody repairman. Employees were allowed to work on their own cars at the garage after hours or during lunch hours. On April 8, 1980, Desgrange brought his 1977 Pontiac Trans Am to the garage to replace a rusting exhaust system.[1] Instead of replacing the factory exhaust system with a standard replacement exhaust system, Desgrange intended to put on "headers".[2]

To remove the old manifold, Desgrange had to use a cutting torch to remove a stripped bolt. Sparks from the torch ignited a bucket of waste paint thinner and motor oil. As Desgrange attempted to move the bucket away from the car, it tipped over. The resultant fire caused over $67,000 damage to the garage. The plaintiff, Michigan Basic Property Insurance Association (MBPIA), the garage's insurer, paid for the damage and then

[1] According to Desgrange's deposition testimony, "[t]he exhaust [system] was rotting away" and one exhaust manifold was cracked. Because exhaust escaped before reaching the muffler, this caused the car to operate loudly. According to Desgrange, the system would likely fall off if not replaced.

[2] "Headers" are special exhaust manifolds designed to relieve system pressure by eliminating sharp bends, rough castings, and other obstructions. Stockel, Auto Mechanics Fundamentals, p 465 (1978 ed). They are high-performance parts.

sued Desgrange and Michigan Mutual Insurance Company, the insurer of the automobile. The plaintiff claimed that Desgrange's no-fault carrier was liable for the damages. The Oakland County Circuit Court granted summary judgment for the plaintiff. Defendant Michigan Mutual appeals.

I

Michigan Mutual argues that the damage is not covered by the no-fault insurance act, MCL 500.3101 *et seq.;* MSA 24.13101 *et seq.* Instead, the defendant claims that MBPIA is liable as the garage keeper's liability insurer. The dispute stems from the scope of the no-fault act. That statute provides:

"Under property protection insurance an insurer is liable to pay benefits for accidental damage to tangible property arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle * * *." MCL 500.3121(1); MSA 24.13121(1).

"Maintenance" is the relevant term here.

Michigan Mutual relies on the definition of "maintenance" used in *Liberty Mutual Ins Co v Allied Truck Equip Co,* 103 Mich App 33; 302 NW2d 588 (1981):

" 'Maintenance' is defined in Webster's New Collegiate Dictionary as 'keeping in an existing state'. While the installation of an auxiliary gas tank might arguably fall outside this strict definition, Allied was correcting a carburetor flooding problem when the accident occurred, so we find the acts of Allied constitute maintenance of the vehicle. See, for example, *Miller v Auto-Owner's Ins Co,* 92 Mich App 263; 284 NW2d 525 (1979), where a determination that installation of shock absor-

bers constituted 'maintenance' was not challenged." 103 Mich App 40.

Michigan Mutual urges us to adopt the dicta of *Liberty Mutual* regarding the installation of non-essential equipment (an auxiliary gas tank in *Liberty Mutual,* headers in our case) and the narrow definition in Webster's. We believe, however, that the *Liberty Mutual* Court's discussion of "maintenance" was rejected by the Supreme Court in *Miller v Auto-Owners Ins Co,* 411 Mich 633; 309 NW2d 544 (1981), where the Court adopted a broader definition of "maintenance":

> "The meaning of the term 'maintenance', in addition to appearing from the common sense of the word, has been established in the case law: 'The "maintenance" aspect of the "ownership, maintenance, use" clause covers the act of repairing the covered automobile.' 12 Couch on Insurance (2d ed), § 45:63, p 152. The policy embodied in the requirement of § 3105(1) that coverage extend to 'injury arising out of the * * * maintenance * * * of a motor vehicle as a motor vehicle' thus is to provide compensation for injuries, such as Miller's, incurred in the course of repairing a vehicle." 411 Mich 639.

We believe Desgrange was "repairing the covered automobile" within the meaning of *Auto-Owners.* The exhaust system on his car needed replacing. He was replacing it. It should not matter that he was replacing a stock exhaust system with high-performance headers. Just as the Supreme Court has spurned artificial distinctions when the "parked car" exclusion of the no-fault act is involved, *Auto-Owners,* 411 Mich 633, 638, we believe the Legislature did not intend to differentiate between replacement with stock parts and replacement with other parts. Allowing the defendants'

argument would lead to confusing attempts to define "stock" parts and "high-performance" parts and may cause legal differences when a mechanic uses a "better" or "worse" brand instead of a replacement part built by an automobile manufacturer.[3] The no-fault act is intended to simplify liability questions, not muddy them with fine distinctions. Considering also that Desgrange would have had to use a blow torch to install any system —because he had to remove the old system—we believe the fire damage arose out of the maintenance of the insured motor vehicle.

## II

Michigan Mutual next argues that, notwithstanding the fact that the damage arose out of the maintenance of a motor vehicle, public policy dictates that the insurer of a damaged structure pay for such damage. Under the guise of this "public policy" argument, both parties have urged us to take sides in a split of appellate decisions balancing the no-fault act against the garage keeper's liability act, MCL 256.541 *et seq.;* MSA 9.1721 *et seq.* One line of authority holds that the no-fault act is subordinate to the garage keeper's act because the Legislature is presumed to know of existing law at the time the no-fault act was passed. *Liberty Mutual, supra,* p 41. Another line of cases holds that the no-fault act renders meaningless "fault" determinations in situations where the no-fault act and the garage keeper's liability act overlap, and, accordingly, the no-fault liability controls. *Buckeye Union Ins Co v Johnson,* 108 Mich App 46; 310 NW2d 268 (1981), *lv den* 414 Mich 873 (1982); *Liberty Mutual Ins Co v Ins Co of*

---

[3] An added problem arises: the headers were less expensive than replacing the stock system.

*North America,* 117 Mich App 197; 323 NW2d 650 (1982). We decline to take a position on this issue. Because Mr. Desgrange was working on his own car, and not a customer's, the garage keeper's liability act and its attendant cases are inapplicable. Under these circumstances, the no-fault insurer's liability is clear under MCL 500.3121; MSA 24.13121.

## III

The plaintiff, MBPIA, seeks interest under the no-fault act on its judgment against Michigan Mutual. The trial court did not address this issue. MBPIA submits that it is entitled to interest under MCL 500.3142; MSA 24.13142. We disagree. That section of the no-fault act applies to judgments for personal protection insurance benefits, not to property protection benefits. The plaintiff's prayer for interest *under the no-fault act* is denied. The plaintiff is, however, entitled to the normal statutory interest on judgments under MCL 600.6013; MSA 27A.6013.

Summary judgment is affirmed.