GREAT AMERICAN INSURANCE COMPANY v OLD REPUBLIC
INSURANCE COMPANY

CONTINENTAL INSURANCE COMPANY v OLD REPUBLIC
INSURANCE COMPANY

Docket Nos. 106613, 106614. Submitted May 10, 1989, at Detroit.
Decided August 2, 1989.

Complete Auto Transit, Inc., owned several trailers that haul
automobiles. They hired Autohaul Industries, Inc., to modify
the trailers to enable them to carry extra cars. A fire caused by
sparks from a cutting torch used by an employee of Autohaul
resulted in extensive damage to Autohaul's premises and to
certain property stored on the premises by John and Nancy
Wright. Great American Insurance Company, the general lia-
bility insurer for Autohaul, paid Autohaul for its damages.
Continental Insurance Company, the Wrights' insurer, paid the
Wrights for their damages. Great American and Continental
then brought actions in the Wayne Circuit Court seeking
recovery from Old Republic Insurance Company, the no-fault
insurer of Complete Auto, for the amounts paid. The actions
were consolidated. Mediation of the suits resulted in evalua-
tions in favor of Great American and Continental. Great Amer-
ican and Continental accepted the evaluations and Old Repub-
lic was deemed to have accepted the evaluations due to its
failure to file an acceptance or rejection within twenty-eight
days. Old Republic then moved to set aside its acceptance and
the trial court, Michael L. Stacey, J., granted the motion. Great
American and Continental thereafter moved for summary dis-
position and the trial court granted their motions. Old Republic
appealed from the orders granting summary disposition. Great
American and Continental cross appealed from the order set-
ting aside Old Republic's deemed acceptance of the mediation
evaluations. The appeals were consolidated by the Court of
Appeals.

The Court of Appeals held:

REFERENCES

Am Jur 2d, Alternative Dispute Resolution §§ 5, 39; Automobile
Insurance § 351.

See the Index to Annotations under Alternative Dispute Resolution;
No-Fault Insurance; Insurance and Insurance Companies.

1. The trial court did not abuse its discretion in setting aside defendant's deemed acceptance of the mediation evaluations. Substantial justice was properly served thereby.

2. The trial court did not err in finding that maintenance of the trailer was being performed at the time of the fire and that damages arose out of the maintenance of the trailer.

Affirmed.

1. APPEAL — MEDIATION — ACCEPTANCE OF EVALUATION.

The Court of Appeals will reverse a trial court's decision to set aside an acceptance of a mediation evaluation only where there has been an abuse of discretion; an acceptance should be set aside where necessary to prevent substantial injustice.

2. INSURANCE — NO-FAULT — AUTOMOBILES — MAINTENANCE.

The maintenance aspect of the phrase "arising out of the owner-ship, operation, maintenance or use of a motor vehicle as a motor vehicle" in § 3121 of the no-fault act covers the act of repairing the covered vehicle regardless of whether the me-chanical work performed was truly necessary, as opposed to optional, or whether the work served not only to preserve the vehicle's condition but to improve it (MCL 500.3121[1]; MSA 24.13121[1]).

*Johnson, Shefferly, McCarroll & Moesta, P.C.* (by *Reginald S. Johnson*), for Great American Insurance Company.

*Harvey R. Weingarden,* for Continental Insurance Company.

*Stegman & Kelin, P.C.* (by *James R. Stegman*), for Old Republic Insurance Company.

Before: HOOD, P.J., and BEASLEY and SHEPHERD, JJ.

PER CURIAM. Defendant, Old Republic Insurance Company, appeals as of right from orders of the trial court granting summary disposition in favor of plaintiffs, Great American Insurance Company and Continental Insurance Company. Plaintiffs cross appeal from an order of the trial court

setting aside defendant's deemed acceptance of the mediation evaluations. On both matters, we affirm.

We deal first with plaintiffs' cross appeal. Mediation of this suit occurred on November 18, 1987, and resulted in evaluations in favor of plaintiffs. Plaintiffs accepted the evaluations. Defendant was deemed to have accepted the evaluations due to its failure to file an acceptance or rejection within twenty-eight days.[1] Defendant subsequently moved to set aside its acceptance. The trial court granted the motion.

This Court will reverse a trial court's decision to set aside an acceptance of a mediation evaluation only where there has been an abuse of discretion.[2] An acceptance should be set aside only where necessary to prevent substantial injustice.[3] Defendant claimed that its failure to file a rejection was the result of mistake, inadvertence, or excusable neglect.[4] Whether an act of neglect is "excusable" is for the trial court to decide.[5]

Following the evaluations, defense counsel informed plaintiffs' counsel, by phone, of his client's rejection of the evaluations. The parties proceeded with discovery. At the settlement conference, defense counsel again voiced his client's desire for a "decision on the merits." The trial court then set a trial date.[6] In granting defendant's motion to set aside the acceptance, the trial court stated:

It was obvious to me at the time, I think every-

[1] MCR 2.403(L)(1).

[2] *Pelshaw v Barnett,* 170 Mich App 280, 283; 427 NW2d 616 (1988), modified in part on other grounds 431 Mich 908 (1988).

[3] *Id.; Hauser v Roma's of Michigan, Inc,* 156 Mich App 102, 104; 401 NW2d 630 (1986).

[4] See MCR 2.612(C)(1)(a).

[5] *Muntean v Detroit,* 143 Mich App 500, 510; 372 NW2d 348 (1985).

[6] Plaintiffs' respective attorneys verified this version of events at the hearing on defendant's motion to set aside the acceptance.

body, that there was no acceptance of that mediation award. I will set aside the award.

It was clear to all concerned that defendant desired to reject the mediation evaluations. Substantial justice was properly served by setting aside defendant's deemed or fictitious "acceptance." In this context, we can find no abuse of discretion.

We now turn to defendant's appeal from the orders of summary disposition in favor of plaintiffs.

This action involves a dispute as to defendant's liability as a no-fault automobile insurer to pay for property damage resulting from a fire.

Complete Auto Transit, Inc., owned several trailers that haul automobiles. They hired plaintiff Autohaul Industries, Inc., to modify these trailers.[7] The purpose of the modifications was to stretch or lengthen the trailers by four to five feet, thereby enabling each trailer to carry one or two extra cars. The modification process entailed the removal of the ramps and hydraulic cylinders, insertion of new material to lengthen the trailer, and then, installation of new tracks and a new hydraulic system.

While working on one of the trailers, an employee of Autohaul was using a cutting torch to cut off the metal pins which were holding the original hydraulic cylinders in place. Sparks from the torch ignited a nearby wall. The resulting fire caused extensive property damage to Autohaul's premises and to certain property being stored on those premises by plaintiffs John and Nancy Wright. Plaintiff Great American, the general lia-

---

[7] Actually, Complete Auto retained Delevan Industries, Inc., to perform the modifications, but Delevan subcontracted the job to Autohaul.

bility insurer for Autohaul, paid Autohaul $161,941.25 for its damages. Plaintiff Continental, the Wrights' insurer, paid the Wrights $3,772 for their damages. Each plaintiff insurer brought an action seeking recovery from defendant as the no-fault insurer of Complete Auto, owner of the trailers. The actions were consolidated. The trial court then granted summary disposition in favor of plaintiffs.

MCL 500.3121(1); MSA 24.13121(1), part of Michigan's no-fault act, provides in pertinent part as follows:

> Under property protection insurance an insurer is liable to pay benefits for accidental damage to tangible property arising out of the ownership, operation, *maintenance* or use of a motor vehicle as a motor vehicle.

The dispute here first centers upon whether Autohaul's employee was performing "maintenance" on the trailer[8] at the time of the fire.

In *Miller v Auto-Owners Ins Co*,[9] our Supreme Court stated:

> The meaning of the term "maintenance," in addition to appearing from the common sense of the word, has been established in the case law: "The 'maintenance' aspect of the 'ownership, maintenance, use' clause covers the act of repairing the covered automobile."

In adopting a liberal construction of the term

[8] A trailer is a motor vehicle under the no-fault act. *Parks v DAIIE*, 426 Mich 191, 198; 393 NW2d 833 (1986); *Kelly v Inter-City Truck Lines, Inc*, 121 Mich App 208; 328 NW2d 406 (1982).

[9] 411 Mich 633, 639; 309 NW2d 544 (1981), quoting from 12 Couch on Insurance (2d ed), § 45:63, p 152.

"maintenance,"[10] the Supreme Court seems to have rejected[11] the narrow approach evidenced in *Liberty Mutual Ins Co v Allied Truck Equip Co,*[12] wherein a panel of this Court had stated:

> "Maintenance" is defined in Webster's New Collegiate Dictionary as "keeping in an existing state." . . . [T]he installation of an auxiliary gas tank might arguably fall outside this strict definition.

Accordingly, the fact that the work being done is intended to make the vehicle "better-than-new" by way of improvement, as opposed to merely being an attempt to preserve the vehicle's original operational condition, does not necessarily serve to render that work outside the scope of "maintenance."

Support for this conclusion may be found in *Michigan Basic Property Ins Ass'n v Michigan Mutual Ins Co.*[13] In that case, damages were incurred in a fire caused by a vehicle owner's use of a cutting torch while attempting to replace his car's factory-installed exhaust system with high-performance "headers." We concluded that the vehicle owner was engaged in maintenance, stating:

> [W]e believe the Legislature did not intend to differentiate between replacement with stock parts and replacement with other parts. Allowing the defendants' argument would lead to confusing attempts to define "stock" parts and "high-perfor-

[10] *Musall v Golcheff,* 174 Mich App 700, 703; 436 NW2d 451 (1989), app for lv pending; *Wagner v Michigan Mutual Liability Ins Co,* 135 Mich App 767, 772-773; 356 NW2d 262 (1984), lv den 422 Mich 940 (1985).

[11] *Michigan Basic Property Ins Ass'n v Michigan Mutual Ins Co,* 122 Mich App 420, 424; 332 NW2d 504 (1983).

[12] 103 Mich App 33, 40; 302 NW2d 588 (1981).

[13] *Supra,* n 11.

mance" parts and may cause legal differences when a mechanic uses a "better" or "worse" brand instead of a replacement part built by an automobile manufacturer. The no-fault act is intended to simplify liability questions, not muddy them with fine distinctions. Considering also that [the vehicle owner] would have had to use a blow torch to install any system—because he had to remove the old system—we believe the fire damage arose out of the maintenance of the insured motor vehicle.[14]

While it is true that, in that case, the original exhaust system was in need of replacement and, in this case, there was nothing, per se, "wrong" with the mechanics of the trailer prior to commencing work on it, we do not believe that this factual distinction calls for a different result in this case. We will not muddy liability questions with examinations into whether the mechanical work performed was truly "necessary" (as opposed to optional) or whether the work served not only to preserve the vehicle's condition, but to go so far as to improve it. Such questions needlessly cloud the no-fault act's attempts at simplification. Accordingly, we decline defendant's invitation to partake in such inquiries. The trial court did not err in finding that "maintenance" of the trailer was being performed at the time of the fire.

Next, the parties dispute whether the damages arose out of the maintenance of the trailer. In *Thornton v Allstate Ins Co,*[15] the Supreme Court interpreted the arising-out-of language of MCL 500.3105(1); MSA 24.13105(1) as follows:

In our view, this language shows that the Legislature was aware of the causation dispute and chose to provide coverage only where the causal

---

[14] *Id.,* at 424-425.

[15] 425 Mich 643, 659; 391 NW2d 320 (1986).

connection between the injury and the use of a motor vehicle as a motor vehicle is more than incidental, fortuitous, or "but for." The involvement of the car in the injury should be "directly related to its character as a motor vehicle." *Miller v Auto-Owners [Ins Co,* 411 Mich 633; 309 NW2d 544 (1981)].

Applying this interpretation to the identical arising-out-of language found in MCL 500.3121(1); MSA 24.13121(1), we conclude that the damages arose out of the maintenance of the trailer.[16] The source of the fire was the use of a cutting torch on the vehicle. The causal connection between maintenance of the trailer and the damage which resulted was more than incidental, fortuitous, or "but for."

Affirmed.

---

[16] See *Michigan Basic Property, supra* at 425.