181 Mich. App. 376 (1989)
448 N.W.2d 854
MICHIGAN MUTUAL INSURANCE COMPANY
v.
CNA INSURANCE COMPANIES
Docket No. 97483.
Michigan Court of Appeals.
Decided December 5, 1989.
Denenberg, Tuffley, Bocan, Jamieson, Black, Hopkins & Ewald (by Michael J. Black and Dana L. Ramsay), for plaintiff.
Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, P.C. (by John P. Jacobs and Deanna E. Hazen), for defendant.
Before: HOLBROOK, JR., P.J., and SAWYER and J.M. BATZER,[*] JJ.
PER CURIAM.
Defendant CNA Insurance Company appeals as of right from a judgment directing a jury verdict in favor of plaintiff Michigan Mutual Insurance Company (MMIC).
The case arises out of a fire on December 24, 1981, in a truck insured by CNA and owned by SCA Services of Michigan and SCA Services of Detroit. The fire occurred while the truck was in the repair facility of D & H Mack Sales & Service. MMIC provided property insurance coverage for D & H. After the fire, MMIC paid D & H and its owner, Winifred Weldon, for the damage to the facility. MMIC then instituted this suit as subrogee of D & H and Weldon, seeking no-fault insurance benefits from CNA.
*379 Testimony elicited at trial revealed that the truck in question was brought to D & H at approximately 3:00 P.M. on December 23, 1981, for repairs because the truck's driver had observed excessive smoke coming out of the engine. A mechanic worked on the truck for approximately an hour and a half. No work was performed on the truck after 4:26 P.M. Sometime after 8:15 P.M., an explosion and fire occurred at D & H. This explosion and fire originated with the truck in question.
Plaintiff's expert, a mechanical engineer, testified that the fire was caused by an electrical short:
In my opinion this fire originated as a result of improperly splicing and improperly supporting the battery cable allowing the cable to come in contact with the drive shaft, ultimately producing a shower of sparks and heating the cable and igniting oil in the vicinity which destroyed the hydraulic suction line which then caused the fire to get out of control as the hydraulic oil burned.
He further testified that it was possible that heavy vibrations resulting from the heavy truck and train traffic in the vicinity of the D & H premises could have caused the building to shake and the battery cable to come into contact with the drive shaft, which eventually caused the short that developed into a fire.
Defendant's expert, also a mechanical engineer, disagreed with plaintiff's theory of the cause of the fire. He testified that the fire began in the truck's cab. However, he could not identify a specific cause of the fire.
Following trial, a jury verdict was rendered in favor of MMIC against CNA. The jury found damages arising out of the "maintenance," but not the "use" of a motor vehicle. The trial judge, who had reserved a ruling on the parties' respective motions *380 for directed verdict, set aside the jury's verdict in part and directed a verdict in favor of MMIC, finding that "as a matter of law" the damages sustained by plaintiff arose out of the "maintenance" and "use" of a motor vehicle. CNA argues that the trial court erred in entering the directed verdict.
MCL 500.3121(1); MSA 24.13121(1) provides in pertinent part:
Under property protection insurance an insurer is liable to pay benefits for accidental damage to tangible property arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle....
The standard for review of the granting of a motion for directed verdict was set forth in Beard v Detroit, 158 Mich App 441, 451; 404 NW2d 770 (1987), lv den 428 Mich 901 (1987).
In Caldwell v Fox, 394 Mich 401, 407; 231 NW2d 46 (1975), the Supreme Court said:
"The jury, not the trial judge, is the trier of fact. Whenever a fact question exists, upon which reasonable persons may differ, the trial judge may not direct a verdict. Conversely, when no fact question exists, the trial judge is justified in directing a verdict. In deciding whether or not to grant a motion for a directed verdict, the trial judge must accord to the non-moving party the benefit of viewing the testimony and all legitimate inferences that may be drawn therefrom in a light most favorable to the non-moving party. If the evidence, when viewed in this manner, establishes a prima facie case, the motion for a directed verdict must be denied."
The term "arising out of" under § 3121(1) does not require as strict a showing of causation as does *381 the concept of proximate cause, but the relationship between "maintenance" and "damage" must be more than "incidental, fortuitous, or but for." Buckeye Union Ins Co v Johnson, 108 Mich App 46, 50; 310 NW2d 268 (1981), lv den 414 Mich 873 (1982). A sufficient causal connection is established if the injury is foreseeably identifiable with the normal maintenance of a motor vehicle. Id. The Michigan Supreme Court has held the maintenance clause of the act covers the act of repairing the covered vehicle, even in the course of a business of maintaining motor vehicles. Michigan Mutual Ins Co v Carson City Texaco, Inc, 421 Mich 144, 148-149; 365 NW2d 89 (1984). This Court has found the necessary causal connection between maintenance and damage where, during the course of repair, fuel hit a light bulb and exploded, causing property damage, Johnson, supra, p 51, and where an employee of an automobile body repair shop who brought his own car into the shop after hours to replace an exhaust system accidentally started a fire while using a torch, causing damage to his employer's property. MBPIA v Michigan Mutual Ins Co, 122 Mich App 420, 425; 332 NW2d 504 (1983). In contrast, where fuel leaked from a car brought into a service station for repair, ignited a flame in a hot water heater in a service bay, and caused fire damage to the premises, this Court found that a condition in the garage itself was ultimately responsible for the accident, and therefore the causal connection prerequisite to no-fault coverage did not exist. Central Mutual Ins Co v Walter, 143 Mich App 332, 335-336; 372 NW2d 542 (1985), lv den 424 Mich 851 (1985).
Viewing the evidence in a light most favorable to defendant, we agree with the trial court that reasonable minds could not differ on the issue whether the fire and resulting damage arose out of *382 the maintenance of SCA'S truck. The truck was brought into D & H for repair to the engine for excessive smoke and heat. While there was some dispute over the precise cause of the fire, there was no evidence that something other than the truck caused the fire, and all evidence introduced pointed to something internal to the truck as the cause of the fire.
Because we find that the trial court properly directed a verdict for MMIC on the basis that the damage arose out of maintenance of a motor vehicle, we find it unnecessary to consider whether the trial court erred in finding, as a matter of law, that the damages also arose out of the use of a motor vehicle.
Defendant next argues that the trial court erred in including "business interruption losses" as part of plaintiff's damages for "loss of use" of its property.
MCL 500.3121; MSA 24.13121 provides in pertinent part:
(3) Damage to tangible property consists of physical injury to or destruction of the property and loss of use of the property so injured or destroyed.
* * *
(5) Property protection insurance benefits consist of the lesser of reasonable repair costs or replacement costs less depreciation and, where applicable, the value of loss of use. However, property protection insurance benefits paid under 1 policy for damage to all tangible property arising from 1 accident shall not exceed $1,000,000.00.
"Loss of use" is not defined in the statute nor have our appellate courts had occasion to date to construe the term.
The goal of the no-fault insurance system is to provide individuals injured in motor vehicle accidents *383 "assured, adequate, and prompt reparation for certain economic losses." Liberty Mutual Ins Co v Allied Truck Equipment Co, 103 Mich App 33, 38-39; 302 NW2d 588 (1981), quoting from Shavers v Attorney General, 402 Mich 554, 578-579; 267 NW2d 72 (1978). Damages which the Legislature intended to exclude from property protection benefits are set forth in MCL 500.3123; MSA 24.13123. Absent from that list is anything similar to business interruption losses.
Since no definition of "loss of use" is provided in the act, the phrase must be construed according to its ordinary and commonly understood meaning. MCL 8.3A; MSA 2.212(1). Contrary to defendant's contention, a review of Michigan and foreign authorities indicates that the term "loss of use" has been generally held to include lost profits.
Ownership of an item of property carries with it the right to use or to control the use of it. Awarding plaintiff only the cost of repair or the decrease in market value fails to recognize that he has lost the use of the item during the time reasonably needed to repair or to replace it. [22 Am Jur 2d, Damages, § 443, p 525.]
In Wendt v Auto-Owners Ins Co, 156 Mich App 19, 25-26; 401 NW2d 375 (1986), this Court held that the trial court erred in striking the plaintiff's tort claim for loss of use of a vehicle and loss of profits resulting therefrom when the defendant failed to timely settle an insurance claim. The Sixth Circuit Court of Appeals has specifically held lost profits to be an appropriate measure of damages for loss of use. National Steel Corp v Great Lakes Towing Co, 574 F2d 339, 345 (CA 6, 1978).
Other jurisdictions also have defined "loss of use" to include recovery for lost profits. See Sharp v Great Southern Coaches, Inc, 256 Ark 773; 510 *384 SW2d 266 (1974) (loss of use of gravel truck and lost profits during repair period recoverable); Fred Frederick Motors, Inc v Krause, 12 Md App 62, 67; 277 A2d 464 (1971) (loss of use includes loss of profits only where it is established that it was impossible to replace a partially destroyed vehicle); Robbins Motor Transportation, Inc v Key GMC Truck Sales, Inc, 56 Ohio App 2d 165, 167; 381 NE2d 1329 (1978) (damages for loss of use of vehicle recoverable for such reasonable period of time as is necessary to make repairs); Karlin v Inland Steel Co, 77 Ill App 3d 183, 187; 32 Ill Dec 657; 395 NE2d 1038 (1979) (lost profits recoverable for length of time reasonably required to repair vehicle).
The Michigan Legislature's choice of the phrase "loss of use" without any express or limiting language evinces its intent to utilize the term's generally accepted broad scope. Such a construction also serves to effectuate the purpose of the no-fault act. Of course, to recover damages for business interruption, the amount of lost profits must be shown to a reasonable certainty. Fera v Village Plaza, Inc, 396 Mich 639, 644; 242 NW2d 372 (1976), reh den 397 Mich 956 (1976).
We reject defendant's contention that property must be totally destroyed for loss of its use to be compensable. Section 3121(3) specifically states that damage consists of "physical injury to or destruction of the property ... so injured or destroyed." (Emphasis added.)
Defendant also argues that Weldon's testimony regarding the market value of the building, the loan assessed value of the land, and the value of damage to the building as a result of the fire was irrelevant, inadmissible hearsay, lacked a proper foundation, and unduly prejudiced defendant.
The only objection raised by defendant at trial *385 to Weldon's testimony regarding the value of the property was on the ground of the lack of foundation. The defendant's failure to assert the remaining evidentiary objections at trial precludes appellate review of those issues. City of Troy v McMaster, 154 Mich App 564, 567; 398 NW2d 469 (1986).
We believe a proper foundation was laid for Weldon's testimony regarding valuation of the property. As owner, Weldon had personal knowledge of the value of the property and testified to having knowledge of neighboring properties. In Grand Rapids v H R Terryberry Co, 122 Mich App 750, 752-753; 333 NW2d 123 (1983), lv den 417 Mich 1100.46 (1983), this Court stated:
Any ordinary individual who has the testamentary qualifications of knowledge of the question about which he attempts to testify may testify as to the value of land. A lay witness will be permitted to testify as to the value of land if he has seen the land and has some knowledge of the value of other lands in the immediate vicinity. In re Brewster Street Housing Site, 291 Mich 313, 345; 289 NW 493 (1939).
The trial court did not err in admitting Weldon's testimony.
Our disposition of the foregoing issues renders it unnecessary to consider the remaining issue raised by defendant on appeal.
Affirmed.
NOTES
[*] Circuit judge, sitting on the Court of Appeals by assignment.