WAGNER v MICHIGAN MUTUAL LIABILITY INSURANCE
COMPANY

Docket No. 66094. Submitted June 30, 1983, at Detroit.—Decided
June 28, 1984. Leave to appeal applied for.

Paul Wagner, in order to assist in starting his Kenworth truck,
connected jumper cables from his Ford pick-up truck and
placed burning but not flaming charcoal underneath the oil pan
of the Kenworth truck for the purpose of warming the oil so
that it would be easier to turn over the engine. He left the
truck in this condition for a period of time, with the pick-up
truck's engine running so as to charge the battery of Ken-
worth's truck. When he returned, Wagner and an acquaintance
noted that the charcoal fire, which had been lit in an old wheel
rim, had apparently died out. Wagner pulled the wheel rim
from beneath the Kenworth oil pan and squirted some lantern
fluid on the charcoal in an attempt to restart the charcoal. The
fluid ignited causing the bottom of the lantern fluid can to blow
out, dousing Wagner's lower body with burning fluid and
resulting in severe burns to him. At the time of the accident,
Wagner was a named insured under both the no-fault insur-
ance policy on the Kenworth truck issued by Michigan Mutual
Liability Insurance Company and the no-fault insurance policy
on the Ford pick-up truck issued by State Farm Automobile
Insurance Company. Wagner brought an action in Monroe
Circuit Court against Michigan Mutual and State Farm, seek-
ing personal protection benefits under the respective no-fault
insurance policies. Both defendants moved for summary judg-
ment. The circuit court, James J. Kelley, Jr., J., granted the
motions for summary judgment, holding that the injuries to
plaintiff were not foreseeably identifiable with normal opera-
tion of either vehicle. Plaintiff appealed. The Court of Appeals
issued an unpublished opinion in this matter on December 15,

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 7 Am Jur 2d, Automobile Insurance §§ 135, 354.
  What are accidents or injuries "arising out of ownership, mainte-
    nance, or use" of insured vehicle. 15 ALR4th 10.
[4] 7A Am Jur 2d, Automobile Insurance § 437.

1983. Rehearing of the matter was granted. On rehearing, it was *held:*

1. Personal protection benefits under the no-fault insurance act are available where the injuries arise out of the ownership, operation or maintenance of a motor vehicle. The term "maintenance", as used in the no-fault act, should be given a liberal construction. The efforts here to start the Kenworth truck were in the nature of servicing that truck and would fall within a broad construction of the meaning of "maintenance" as that term is used in the no-fault insurance act.

2. While personal protection benefits for injuries arising out of the maintenance of a vehicle are available only where the injuries arise out of the "normal" maintenance of the vehicle, the restrictive adjective "normal" refers to the nature of the function, not to the nature of the method employed to accomplish that function. The attempt to start a truck was a normal function in the maintenance of the vehicle, notwithstanding the fact that plaintiff's method to warm the oil to facilitate the starting of the vehicle might be deemed to be unorthodox.

3. The trial court erred in holding that the plaintiff's injuries were not foreseeably identifiable with the normal operation of the Kenworth truck.

4. Since plaintiff was not an occupant of either vehicle and was a named insured in both policies, both defendants were in the same order of priority to provide personal protection insurance benefits.

Reversed and remanded.

1. INSURANCE — NO-FAULT INSURANCE — AUTOMOBILES — PERSONAL PROTECTION BENEFITS — MAINTENANCE OF MOTOR VEHICLES.

The term "maintenance" as used in the personal protection benefits provisions of the no-fault insurance act embodies a legislative intent that coverage extends not only to injuries incurred while repairing an automobile but also to injuries incurred in activities which are more in the nature of servicing of the vehicle rather than repairing the vehicle (MCL 500.3105[1]; MSA 24.13105[1]).

2. INSURANCE — NO-FAULT INSURANCE — AUTOMOBILES — PERSONAL PROTECTION BENEFITS — MAINTENANCE OF MOTOR VEHICLES.

Injuries which arise when a combustible liquid that is being used to assist in the starting of a vehicle ignites are injuries which are causally connected with the maintenance of the vehicle being started and are injuries which are compensable under

the personal protection provisions of the no-fault insurance act (MCL 500.3105[1]; MSA 24.13105[1]).

3. INSURANCE — NO-FAULT INSURANCE — AUTOMOBILES — PERSONAL PROTECTION BENEFITS — "NORMAL MAINTENANCE".

An injury is compensable under the personal protection benefits provisions of the no-fault insurance act if the injury is foreseeably identifiable with the normal maintenance of a motor vehicle; maintenance is "normal" if the function is normally associated with the maintenance of the vehicle even if the method to accomplish that function is unorthodox.

4. INSURANCE — NO-FAULT INSURANCE — AUTOMOBILES — PERSONAL PROTECTION BENEFITS — PRIORITY OF COVERAGE.

Separate insurers of two different vehicles are of the same order of priority with respect to the obligation for personal protection insurance benefits under their respective no-fault insurance policies where the claimant is injured while the two vehicles are involved in an attempt to start one of the vehicles, the claimant is a named insured on each of the insurance policies, and the claimant, at the time of the accident, is not an occupant of either vehicle or any other motor vehicle (MCL 500.3115; MSA 24.13115).

*Klein & Bloom, P.C.* (by *Gary M. Bloom),* and *Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *James L. Borin),* of counsel, for plaintiff.

*Ready, Sullivan & Ready* (by *Thomas D. Ready),* for State Farm Mutual Insurance Company.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *David J. Winter),* for Michigan Mutual Liability Insurance Company.

Before: CYNAR, P.J., and HOOD and R. J. JASON,* JJ.

PER CURIAM. Plaintiff appeals as of right from summary judgments in favor of defendants on plaintiff's claims for personal injury protection

---

* Circuit judge, sitting on the Court of Appeals by assignment.

benefits under the policies of no-fault insurance issued by defendants.

The trial judge decided the case on the following stipulated statement of facts:

"On December 21, 1980, the plaintiff, Paul Wagner was severely burned in an accident which occurred in the City of Monroe, Monroe County, Michigan. At the time of the accident, plaintiff was an insured under two separate motor vehicle insurance policies which provided personal insurance protection benefits under the Michigan no-fault law. The Michigan Mutual policy covered a 1978 Kenworth truck (tractor) being policy number 18-81006335. The State Farm policy insured a 1979 Ford pick-up truck, policy number 22-1488-525.

"December 21, 1980 was a Sunday and the weather was quite cold. The Kenworth tractor, which was connected to a trailer, was parked at an abandoned service station at 1240 North Dixie, Monroe, near I-75. Plaintiff arrived in his 1979 Ford pick-up truck from home, and took it over where the Kenworth truck was parked. He connected the pick-up truck to the Kenworth truck by way of battery jumper cables and took out an old tire rim (without a tire on it), put charcoal in it, took a can of Coleman lantern fluid out of the bed of the pick-up truck and squirted the charcoal with it. He then lit the charcoal and when the flame died down, he put the charcoal fire underneath the oil pan of the Kenworth truck for the purpose of heating the oil therein to make it easier to turn over the engine. He left the truck in this condition and went in to have coffee at an adjacent restaurant.

"A short time later, he came out with an acquaintance, Dwayne Miller and they noted that the charcoal fire had apparently gone out and seemed cold. He then pulled out the rim with the charcoal in it from underneath the truck to a spot just in front of the Kenworth truck. At all times, the pick-up truck had been running at an idle for the purpose of transmitting energy into the battery of the Kenworth truck through the attached jumper cables. Wagner then squirted more Coleman lantern fluid on to the charcoal in the rim in an

attempt to then restart the charcoal fire but at that point, an open flame or spark ignited the fluid in the can causing the bottom of the can to blow out and dousing the lower part of his body with burning charcoal fluid resulting in severe burns.

"The purpose of the efforts on the part of Paul Wagner was to warm the Kenworth tractor-trailer rig. The effort was to fuel a small charcoal fire under the semi to warm the engine oil so that the vehicle would start easier in the colder temperature."

The trial judge ruled in favor of defendants, holding:

"At most, the attempted starting of a vehicle would fall under the heading 'operation' not under ownership, maintenance or 'use'. Expanding the *Kangas* logic to the present case, any injury must be foreseeably identifiable with the normal operation of the vehicle. Squirting an explosive liquid from a can onto a charcoal fire while holding the can in one's hand, is not in any way identifiable with normal vehicle operation." See *Kangas v Aetna Casualty Co,* 64 Mich App 1; 235 NW2d 42 (1975).

On appeal, plaintiff claims that the trial judge erred by finding that his injuries did not arise out of the maintenance of his vehicle. The phrase "arising out of the ownership, maintenance or use" of a motor vehicle has a long history of use in automobile insurance policies and judicial interpretation. It was apparently used in Michigan's no-fault act with knowledge of that history. *Miller v Auto-Owners Ins Co,* 411 Mich 633, 638; 309 NW2d 544 (1981). See also *Schweitzer v Aetna Life & Casualty Co,* 306 Pa Super 300; 452 A2d 735, 737 (1982); O'Connell & Henderson, Tort Law, No-Fault & Beyond (1975), p 362. In *Miller,* our Supreme Court stated:

"The meaning of the term 'maintenance', in addition to appearing from the common sense of the word, has been established in the case law: 'The "maintenance" aspect of the "ownership, maintenance, use" clause covers the act of repairing the covered automobile.' 12 Couch, Insurance (2d ed), § 45.63, p 152. The policy embodied in the requirement of § 3105(1) that coverage extend to 'injury arising out of the * * * maintenance * * * of a motor vehicle as a motor vehicle' thus is to provide compensation for injuries, such as Miller's, incurred in the course of repairing a vehicle." *Miller, supra,* p 639.

While we agree with defendants that warming an engine in order to start it is not a "repair" as that term is commonly understood, we disagree with defendants' conclusion that the Supreme Court has narrowly construed "maintenance" to include only repairs. The Court stated that the meaning of maintenance is derived from "the common sense of the word"; the Court then stated that the term "covers the act of repairing". The language used by the Court leaves claimants free to argue that maintenance covers activities other than repair. Earlier in its opinion, the Court stated:

"It would perhaps be possible, as argued by Auto-Owners, to distinguish among parked vehicles according to whether they were parked involuntarily, as when a driver pulls onto the shoulder to repair a flat tire, or voluntarily, as in Miller's case. Such a distinction, however, would often be difficult to draw. What of a car which is obviously malfunctioning but which the driver is able to nurse home to his or her garage, where the tools necessary for the repair are available? What of a car which is voluntarily parked in one's driveway but which, after a cold Michigan night, becomes involuntarily parked? Would an injury from a battery explosion while trying to jump-start the car be covered? We do not think that a nebulous distinction between volun-

tarily and involuntarily parked-for-repair vehicles was intended." *Miller,* p 638.

The Court's reference to efforts to jump-start a car after a cold Michigan night strongly implies that it has not sanctioned a definition of maintenance limited only to repairs. The Court clearly indicated its reliance on the body of judicial authority which has been constructed defining the phrase "arising out of the ownership, maintenance or use"; in this phrase, maintenance has traditionally been given a liberal construction. See 6B Appleman, Insurance Law & Practice (Buckley ed), § 4315, pp 339-341. The Supreme Court's interpretation of "maintenance" is also illustrated by its analysis in *Heard v State Farm Mutual Automobile Ins Co,* 414 Mich 139, 154; 324 NW2d 1 (1982). In *Heard,* the plaintiff was injured when he was hit by an insured car while pumping gas into his own uninsured car. The Court clearly assumed that the refueling of a vehicle, without more, is maintenance of that vehicle. *Heard, supra,* pp 146-147, 154. See also *Gutierrez v Dairyland Ins Co,* 110 Mich App 126; 312 NW2d 181 (1981), *rev'd on other grounds* 414 Mich 956; 327 NW2d 253 (1982) (see *Heard, supra,* p 153, fn 15); *State Farm Mutual Automobile Ins Co v Pan American Ins Co,* 437 SW2d 542 (Tex, 1969).

This Court has adopted a broad definition of maintenance in order to advance the purposes of the no-fault act. See *Michigan Basic Property Ins Ass'n v Michigan Mutual Ins Co,* 122 Mich App 420, 424-425; 332 NW2d 504 (1983).

We think that the actions of plaintiff in heating his oil pan in order to start his truck constituted maintenance of the Kenworth truck. Although starting a vehicle on a cold morning is more in the nature of servicing it than repairing it, such ser-

vicing fits squarely within the meaning which the Legislature intended the term "maintenance" to have. The judges of this Court have not agreed in their views of the application of the no-fault act to accidents occurring in repair facilities. Compare *Buckeye Union Ins Co v Johnson,* 108 Mich App 46; 310 NW2d 268 (1981), with *Liberty Mutual Ins Co v Allied Truck Equipment Co,* 103 Mich App 33; 302 NW2d 588 (1981). This disagreement is based on a consideration of the purposes of the no-fault act. We have little doubt, however, that most would agree that the purposes of the no-fault act would be defeated by a narrow construction of the term "maintenance" applied in cases like the present one in which an owner-operator of a vehicle attempted to service the vehicle in a place other than a service facility. If this type of activity is not covered, it is hard to imagine the Legislature's reasons for including the coverage of maintenance. The need for insurance coverage would appear to be far greater in cases of roadside service than in cases of major repairs which are usually performed in facilities covered by other insurance.

Defendants also claim, and the trial court held, that plaintiff's injuries did not arise out of his maintenance of the tractor even if his actions came within the statutory definition of maintenance. The degree of causation required to be shown before injuries may be said to "arise out of the * * * maintenance * * * of a motor vehicle" was discussed in *Gutierrez, supra,* 110 Mich App 135:

"Cases dealing with this issue in other contexts have set out what is necessary for the showing of a sufficient causal connection. The term 'arise out of' does not require as strict a showing of causation as does the concept of proximate cause. *Williams v Citizens Mutual*

*Ins Co,* 94 Mich App 762, 764; 290 NW2d 76 (1980), *Shinabarger, supra,* 313-314, *Kangas v Aetna Casualty & Surety Co,* 64 Mich App 1, 17; 235 NW2d 42 (1975), *lv den* 395 Mich 787 (1975). The relationship between the maintenance and the injury must, however, be more than incidental, fortuitous, or but for. *Ricciuti v Detroit Automobile Inter-Ins Exchange,* 101 Mich App 683; 300 NW2d 681 (1980), *Detroit Automobile Inter-Ins Exchange v Higginbotham,* 95 Mich App 213, 222; 290 NW2d 414 (1980), *lv den* 409 Mich 919 (1980), *Kangas, supra,* p 17. It is not sufficient that the motor vehicle is merely the site of the accident. *Shinabarger, supra,* p 314. A sufficient causal connection is established, however, if the injury is foreseeably identifiable with the normal maintenance of a motor vehicle. *Higginbotham, supra,* p 222, *Williams, supra,* p 765, *Kangas, supra,* p 17."

See also *Buckeye Union, supra,* pp 50-51.

We have no trouble concluding that the maintenance of the Kenworth tractor was causally connected with plaintiff's injuries. The truck was not merely the place at which the explosion causing the injury took place. The fire was a direct result of plaintiff's attempts to warm the oil pan of his truck engine. This is more than a fortuitous or incidental relationship.

Defendants also argue that plaintiff's efforts to warm his truck's oil were not "normal maintenance" as that term was used in *Gutierrez, supra.* On this point, we strongly disagree. Plaintiff's methods were, perhaps, unorthodox. "Normal" as used in the term "normal maintenance" refers, however, to function, and not to method. In the present case, plaintiff's maintenance was normal because it was directed toward enabling his vehicle to start, a normal function. Defendants have strongly implied that the plaintiff should be penalized because safer methods to start his truck

might have been used. This approach was rejected by the Legislature when it adopted a no-fault system of motor vehicle insurance. A no-fault system would be considerably less useful if coverage could be denied because of the dangerous manner in which the insured's act (*i.e.,* operation, maintenance or use) was performed. We believe that the trial judge erred by holding that plaintiff's injuries were not foreseeably identifiable with the normal maintenance of a motor vehicle.

Plaintiff was not an occupant of a motor vehicle at the time of the accident. See *Winters v National Indemnity Co,* 120 Mich App 156; 327 NW2d 423 (1982); *Kalin v Detroit Automobile Inter-Ins Exchange,* 112 Mich App 497; 316 NW2d 467 (1982). Coverage is governed by MCL 500.3114(1); MSA 24.13114(1), because plaintiff was a named insured on his policies with both defendants. See MCL 500.3115(1); MSA 24.13115(1). Both defendants were in the same order of priority to provide personal protection insurance benefits. See *Winters, supra,* pp 163-164. Thus, MCL 500.3115(2); MSA 24.13115(2) applies.

Reversed and remanded for proceedings consistent with this opinion.