Michael TIMMERS, Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, Respondent.

No. C8–85–721.

Court of Appeals of Minnesota.

Oct. 8, 1985.

Norman M. Brody, Roseville, for appellant.

Albert J. Dickinson, St. Paul, for respondent.

Heard, considered and decided by FOLEY, P.J., and FORSBERG and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

This appeal is from a judgment and the denial of a motion for amended findings or new trial. The trial court determined that appellant's injuries did not arise from the "use or maintenance of a motor vehicle" within the meaning of the no-fault act. We affirm.

## FACTS

On January 11, 1982, Appellant Michael Timmers went to replace a dimmer switch on his brother's pickup truck [1] stored in his brother's barn.

After Timmers had removed the switch from the truck, he bought a new switch at an auto parts store across the street. He found the mounting holes for the new switch did not fit and was informed by a store employee that he would have to drill the mounting holes himself.

Timmers carried the switch to a drill press table approximately forty feet from the location of the truck. (The trucking business operated by Timmers brother required him to have maintenance tools on hand, including a drill press, for periodic repairs.) While operating the drill, the ta-

---

1. A dimmer switch is a floor-mounted, foot-operated button which dims and brightens a vehicle's headlights when approaching an oncoming vehicle.

ble rotated on its stand, drawing his finger into the drill bit.

Timmers applied for no-fault insurance benefits from respondent State Farm Mutual Automobile Insurance Company who insured the truck. State Farm denied coverage and Timmers brought this action. The trial court found that Timmers injuries did not arise out of the maintenance or use of a motor vehicle as defined in Minn.Stat. § 65B.43, subd. 3 and thus he was not entitled to no-fault benefits.

## ISSUE

Did the trial court err in its determination that appellant's injuries did not arise from the "use or maintenance of a motor vehicle" within the meaning of Minn.Stat. § 65B.43, subd. 3?

## ANALYSIS

Minn.Stat. § 65B.46 limits payment of no-fault benefits to those injuries "arising out of the maintenance or use of a motor vehicle."

No Minnesota court has ruled on the issue of coverage for injuries arising out of the "maintenance" of a motor vehicle. However, many of the principles applicable to "use" cases apply equally to cases involving "maintenance."

▮▮▮ Both require a showing of a causal connection between the use or maintenance of the motor vehicle and the injury sustained. The causal connection need not be the proximate cause of the injury in the tort sense; it is sufficient if " 'the injury is a natural and reasonable incident or consequence of the use of the vehicle.' " Nadeau v. Austin Mutual Insurance Co., 350 N.W.2d 368, 370 (Minn.1984) (citation omitted). Timmers' injuries were not a natural incident or consequence of such use or maintenance of the vehicle. He was forty feet away working on a repair when the accident occurred. Further, the relationship between the use or maintenance and

the injury must be more than a "mere fortuity." See Associated Independent Dealers Inc. v. Mutual Service Insurance Co., 304 Minn. 179, 182, 229 N.W.2d 516, 519 (1975). The defective or improperly locked drill press stand could have caused injury to him for any operation he undertook; thus the fact that he was injured while making repairs to an automobile part was merely a fortuitous circumstance. Finally, it is not sufficient that the motor vehicle is merely the site of the accident. Rather it must be an "active accessory" to the injury sustained. North River Insurance Co. v. Dairyland Insurance Co., 346 N.W.2d 109, 114 (Minn.1984); Tlougan v. Auto-Owners Insurance Co., 310 N.W.2d 116, 117 (Minn.1981).

The no-fault act limits recovery for injuries as a matter of policy to "activities 'whose costs should be allocated to motoring as part of an automobile insurance package.' " Galle v. Excalibur Insurance Co., 317 N.W.2d 368, 370 (Minn.1982) (quoting Commissioner's comments to section 1(a)(6) of the 1972 Uniform Motor Vehicle Accident Reparations Act). Injuries resulting from the use of an improperly functioning drill press are not by any stretch of the imagination the type of activity whose costs should be borne by other motorists.

Four Michigan cases cited by Timmers allowed coverage in maintenance questions. A close examination of these cases reveals the injuries resulted from work being done on the vehicle itself. Miller v. Auto-Owners Insurance Co., 411 Mich. 633, 309 N.W.2d 544 (1981) (car fell on man's chest while he was attempting to replace shock absorbers); Wagner v. Michigan Mutual Liability Insurance Co., 135 Mich.App. 767, 356 N.W.2d 262 (1984) (plaintiff was burned by explosion which occurred as a result of his efforts to warm the oil pan of his truck with a pan of charcoal); Michigan Basic Property Insurance v. Michigan Mutual Insurance Co., 122 Mich.App. 420, 332 N.W.2d 504 (1983) (a blow torch, which was being used to remove a stripped

bolt from the vehicle, ignited a bucket of paint thinner); and *Buckeye Union Insurance Co. v. Johnson,* 108 Mich.App. 46, 310 N.W.2d 268 (1981) (a mechanic was under the vehicle with a trouble light to check a problem with the fuel line. When he disconnected the line, fuel squirted onto the light bulb, causing an explosion). Here, Timmers has established none of the prerequisites necessary to establish causal connection between the maintenance of the motor vehicle and the injury sustained.

**DECISION**

The trial court properly determined that appellant's injuries did not arise out of the use or maintenance of a motor vehicle within the meaning of the no-fault act.

Affirmed.