*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SYNERGY SPINE AND ORTHOPEDIC
SURGERY CENTER, LLC,

UNPUBLISHED
July 15, 2021

Plaintiff-Appellee,

and

SILVER PINE IMAGING, LLC,

Intervening Plaintiff-Appellee,

v

No. 350549
Washtenaw Circuit Court
LC No. 17-001041-NF

AMERICAN COUNTRY INSURANCE
COMPANY,

Defendant-Appellant.

Before: RIORDAN, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

Defendant American Country Insurance Company appeals as of right the trial court's order for judgment in favor of plaintiff Synergy Spine and Orthopedic Surgery Center ("plaintiff Synergy") and plaintiff Silver Pine Imaging ("plaintiff Silver Pine") in the amount of $299,282.70. On appeal, defendant argues that the trial court committed multiple errors before, during, and after trial. We affirm.

## I. FACTS AND PROCEEDINGS

On October 19, 2017, plaintiff Synergy filed its complaint against defendant. Plaintiff Synergy alleged that Laquita Jackson-Davis was involved in a motor-vehicle accident on March 19, 2017, and that it provided her with medical services totaling $52,288. The complaint further alleged that Jackson assigned her right to receive personal protection insurance (PIP) benefits under the no-fault act, MCL 500.3101 *et seq.*, to plaintiff Synergy, that it sought those benefits from defendant, the responsible no-fault insurer, and that defendant refused to pay. Plaintiff

Synergy thus sought $52,288 in damages from defendant, as well as statutory attorney fees and interest under MCL 500.3142 and MCL 500.3148.

On March 2, 2018, plaintiff Silver Pine moved to intervene in the case. Plaintiff Silver Pine alleged that it provided medical services totaling $42,400 to Jackson as a result of the same accident, that it received an assignment of rights from Jackson, and that defendant refused to pay her medical bills.

Case evaluation was held on August 9, 2018. The panel awarded $160,000 to plaintiff Synergy and $37,000 to plaintiff Silver Pine. Defendant rejected both awards.

Pre-trial proceedings established that Jackson was involved in an accident in July 2015. She sued defendant in Wayne Circuit Court for benefits allegedly owed for that accident, but that court dismissed her case on the basis of fraud because she substantially exaggerated her injuries. Additionally, in November 2018, Jackson testified in a deposition that she had not been involved in any accidents after the March 2017 accident at issue. However, defendant subsequently learned that Jackson had been involved in an accident on April 5, 2017, that required overnight hospitalization.[1]

Plaintiffs filed a motion in limine to exclude evidence of the April 2017 accident, arguing that none of defendant's experts concluded that Jackson's injuries at issue were caused by that accident. Thus, plaintiffs argued, evidence of that accident was irrelevant. Additionally, plaintiffs argued that evidence of Jackson's fraud with respect to the July 2015 accident should be excluded at trial because defendant did not plead fraud as an affirmative defense.

A few days before trial, the trial court ruled that defendant could not argue fraud. The implication of its ruling on the record was that defendant could not introduce any evidence or ask any questions of Jackson concerning her alleged fraud with respect to the July 2015 or April 2017 accidents, but that it could reference those accidents if arguing that plaintiffs' medical bills did not arise out of the March 2017 accident at issue:

> *The Court*: I'm not going to allow you to argue fraud. I am going to allow you, obviously, to -- and that's one of the reasons you're going to be able to examine her about what accident she had at that time. And then if she had subsequent accidents, you're going to be able to require that for that fact, or your experts can comment or not comment. That's okay. I'll let you require the fact that she had a subsequent accident. Okay?
>
> [*Defense Counsel*]: Okay.
>
> *The Court*: But you're not going to be able to argue fraud or (inaudible). Your argument is going to be it's not reasonable and necessary.

---

[1] Jackson was also involved in a March 2010 accident, but that is not relevant for this appeal.

At the same hearing, defendant explained that on April 10, 2019, the day before, it had received medical bills from plaintiff Synergy totaling about $69,000 relating to a shoulder surgery that plaintiff Synergy provided to Jackson on March 29, 2019. Defendant asked that the trial court preclude plaintiff Synergy from introducing these medical bills at trial or seeking damages on the basis of the bills, reasoning that the bills were not yet overdue because the 30-day period for paying such bills under MCL 500.3142 had not yet expired. The trial court, however, ruled that the bills were admissible:

> *The Court*: If it's been rendered as a claim, you can point out (inaudible) that you just got them, but we still don't think we (inaudible). You know, the point is when you come up, you can't just say (inaudible) any treatment, anything you're claiming up until the time, which is (inaudible) treatment.

> [*Defense Counsel*]: But they can only claim what's overdue.

> *The Court*: They can claim what's due, and they can also claim, if some of it's overdue, for interest or attorney fees. They can claim it's due up until this date. You can either say, "Yea, we agree to pay that," or, "We're not going to pay it."

At trial, plaintiffs' first witness was defendant's claims adjuster, Danielle McCowan. Consistent with MRE 611(d)(3), plaintiffs' counsel examined McCowan, an adverse witness, by leading questions during direct examination. Relevant to this case, McCowan testified that defendant denied paying plaintiffs' medical bills in the instant case based on the recommendation of an independent medical examination (IME). The IME indicated that Jackson "did not sustain any acute injuries in the [March 2017] accident." Once the direct examination concluded, the trial court informed defendant that "since [plaintiffs' counsel] called your client out of order, he was, of course, allowed to lead, but you are also allowed to lead your client as well." Defendant then briefly cross-examined McCowan concerning issues that were raised on direct examination.

Plaintiffs rested on the second day of trial.[2] On the third day of trial, defendant called Jackson as a witness. Defendant examined Jackson concerning her prior accidents and medical treatment. At one point, defendant asked Jackson about her admittance to the hospital after the April 2017 accident, which caused her to lose her temper with defense counsel:

> *The Witness*: I told you that, sir. But the only thing that I've done -- I've paid for all insurance with your company, American Country, so I don't understand. Why are you-all taking me through this? My husband has paid you, and I've paid you, so why are you-all taking me through this? This is so unfair. I done had surgery. We're paying just thousands and thousands. Why don't you pay these people their money and quit dragging me through this? This is unfair.

> Do you know what I've gone through to come here today? Then you-all put me on this stand, and you up here confusing me. This is unfair. We've paid

---

[2] The trial was essentially a medical dispute concerning whether Jackson's injuries and corresponding treatment were attributable to the March 2017 accident. It is unnecessary to detail that dispute for the purposes of this appeal.

you thousands of dollars for you to represent us.  We done nothing wrong, so quit putting me on the stand. . . .  Please.  I want to go home.  I'm in pain.  Quit -- quit bashing me.

>     *The Court*:  Do you have any more questions for this witness?
>
>     *The Witness*:  Please let me go.
>
>     *The Court*:  (Inaudible.)
>
>     [*Defense Counsel*]:  Judge, I can -- we'll go on the records, Judge.
>
>     *The Court*:  Huh?
>
>     [*Defense Counsel*]:  We'll just -- we'll go based on the records.

Jackson then repeatedly apologized to the jury for her outburst and said that she was "tired of living like this."  The trial court adjourned the trial to allow the jury a break, and before the jury reentered the courtroom, defendant sought to question Jackson to create a record.  Although it is not clear from the transcript, it appears that defendant wanted to create a record to establish that Jackson had committed fraud:

>     [*Defense Counsel*]:  Okay.  I had wanted to make an offer of proof with her that she had not provided American County with it, but it was just kind of difficult; so -- but that was not -- you've already ruled that we couldn't raise those things here.  I just wanted to make certain the record's clear.
>
>     [*Plaintiffs' Counsel*]:  I'm sorry.  You're saying that you wanted to ask her questions that the Court has said that you can't ask?
>
>     [*Defense Counsel*]:  No, no.  I was going to do it after the jury left.  I was gonna --
>
>     *The Court*:  She's -- she's not -- I mean, we can't -- she was really upset.  I wouldn't put her through it.  I mean, you have your objection.  I'm not gonna put her through another --
>
>     [*Defense Counsel*]:  No, no.  I understand that, Judge.  I understand that.

At some point during that day of trial, the parties and the trial court apparently had an off-the-record discussion about whether defendant could recall McCowan to testify.  The trial court ruled that defendant could not recall McCowan to testify, and after the trial was adjourned for the day, the trial court allowed defendant to place its objections on the record:

>     [*Defense Counsel*]:  Okay.  Two things:  One, we had wanted -- we had wanted -- we were going to call back on the stand Ms. McCowan, and the Court indicated that we cannot do so, so I want the record clear.  And, in addition, I was going to do a -- I suppose a -- another offer of proof with respect to potential fraud

by Ms. Jackson-Davis that the Court's already said we couldn't get into. So I was going to do the offer of proof there -- there also. . . .

*The Court*: . . . . On the issue of recalling your client, you -- I don't allow a -- the Plaintiff gives up -- the Plaintiff gives up the ability to object to you leading on your own client when they call -- well, you decide this -- if you have the right to object to someone leading your client. And you can have it one way. You can say, "No. We're going to call this witness in my case in chief," or you go ahead and you cross-examine on it.

. . . . So I understand you might not have understood that and you were planning something else, but perhaps in the future, ask me if you're gonna do that.

In addition, the parties and the trial court discussed how to instruct the jury with respect to causation and whether plaintiffs' proposed instruction on that matter should be provided to the jury:

[*Plaintiffs' Counsel*]: I'll read it into the record. "Special jury instruction regarding causation under Section 3107(1)(a): In order for Defendant to be liable under the Michigan No-Fault Law for the services provided to Ms. Jackson-Davis, there must be a sufficient causal connection between injuries Ms. Jackson-Davis sustained in the motor vehicle accident and the services provided to Ms. Jackson-Davis.

"The injuries Ms. Jackson-Davis sustained in the motor vehicle accident need not be the sole or only cause of Ms. Jackson's need for services; rather the law in Michigan provides that a sufficient causal connection exists if the motor vehicle accident is one of the causes for her need for services, even though there may be other independent causes. Therefore, if you determine that the motor vehicle accident was one of the causes Ms. Jackson-Davis needed -- one of the reasons Ms. Jackson-Davis needed the services provided to her, then a sufficient causal connection has been established under the law to render Defendant liable for those services.

[*Defense Counsel*]: Judge, that's really reducing the burden of proof.

* * *

*The Court*: I've heard the argument Counsel, and I disagree. I think it's an accurate statement of the law.

Defendant moved for a mistrial the following morning, which the trial court denied:

[*Defense Counsel*]: . . . Your Honor, we had a couple of things we wanted to address with you before (inaudible). First, I was thinking about the blowup yesterday, and it's come to my attention that even one of the jurors started sobbing (inaudible) she was out there, and I would vote for a mistrial. Her answers were not responsive. She indicates that she is writing checks to American Country. She

-5-

was not the insured.  She was not responsible for any checks to American Country. . . . And I just think that, you know -- Judge, I had no clue that she was in so much pain that she couldn't be here. . . .  You had adjourned the trial because we thought, well, in two weeks she should be okay.  So for that reason, Judge, I vote for a mistrial.

*The Court*:  Okay.  I mean, you are right.  I did adjourn the trial at your request and only for that reason, so you could call this witness.  It's your witness, and if you don't like the result of what she said, that's frankly, on you.

[*Defense Counsel*]:  She wasn't responsive to the questions, Judge.

*The Court*:  Counsel, I'm not gonna grant a mistrial.

Closing arguments were conducted after this ruling.  Plaintiffs' counsel immediately started his closing argument as follows:

[*Plaintiffs' Counsel*]:  At the beginning of this case, I told you that it was about the payment of over $300,000 in medical bills that the insurance company is trying to stick Ms. Jackson-Davis with.

[*Defense Counsel*]:  Objection, Your Honor.  There's no indication we're trying to stick her with that, and there's no -- they've given (inaudible) this is closing argument.

*The Court*:  That's what argument is.

[*Defense Counsel*]:  Okay.

*The Court*:  You can go ahead and argue the evidence.  The reasonable interest is the evidence, what you think is believable (inaudible), and I'll give you the same latitude, sir.

Go right ahead.

[*Plaintiffs' Counsel*]:  Thank you, Your Honor.

Yesterday when we heard Ms. Jackson-Davis's testimony, you were reminded that this case is a lot more than just medical bills.  It's about a person, and it's about a person who really needed the insurance company . . . .

Plaintiffs' counsel asked the jury to find in favor of plaintiff Synergy in the amount of $244,135.70 for medical bills and $18,578.31 for overdue interest, and in favor of plaintiff Silver Pine in the amount of $63,600 for medical bills and $9,593 for overdue interest.

The trial court, during its final instructions, provided the causation instruction that had been discussed the day before.  Ultimately, the jury found that defendant owed plaintiff Synergy

$127,960 for medical services and $15,239 for overdue interest; and defendant owed plaintiff Silver Pine $28,400 for medical services and $2,840 for overdue interest.

On July 10, 2019, the trial court entered its order for judgment consistent with the jury verdict. In addition, the trial court awarded plaintiffs taxable costs in the amount of $14,019.45, attorney fees under MCR 2.403(O) in the amount of $98,200, and prejudgment interest in the amount of $12,624.25. The total judgment in favor of plaintiffs was $299,282.70.

On July 29, 2019, defendant filed its motion for a new trial, remittitur, and to strike case-evaluation sanctions. The motion mostly raised arguments that had previously been addressed by the trial court and that defendant now raises on appeal. The trial court denied defendant's motion at an August 8, 2019 hearing, with the following exchange:

> *The Court*: (Inaudible) question. We have been over these same issues before trial, during trial, after trial; and you just keep coming and arguing the same thing. Why do you need to do this for your appeal? I don't understand.

> * * *

> *The Court*: We have argued this over and over, and I ruled over and over, and when you keep bringing the same issues up, I'm beginning to -- I don't know why you're doing it. . . . Is there anything new here, Counsel for Plaintiff, that I haven't seen before that I need to rule on?

> [*Plaintiffs' Counsel*]: The only issue that I have that weren't subject to pretrial motions was whether the Court should strike Mr. Posch's testimony. The Defendant has stated that he was called as an expert and he gave expert testimony. . . .

> *The Court*: Well, was there an objection at trial?

> [*Plaintiffs' Counsel*]: There wasn't. That's our response.

> * * *

> *The Court*: The Court is denying. It has been previously addressed. As to this new issue, you did not object at the time of trial; therefore, you waived it. . . . The motion is denied, Counsel. Good luck. . . .

Defendant filed its claim of appeal on September 10, 2019. On September 10, 2020, we held the claim of appeal in abeyance because another court entered an order of liquidation after finding defendant insolvent. *Synergy Spine & Orthopedic Surgery Ctr LLC v Am Country*, unpublished order of the Court of Appeals, entered September 10, 2020 (Docket No. 350549). That abeyance period has now expired.

## II. CAUSATION INSTRUCTION

Defendant argues that the trial court erred by instructing the jury that it may be liable for PIP benefits if the March 2017 accident was "one of the causes" of Jackson's injuries, without also informing the jury that her injuries must be more than "incidental, fortuitous, or 'but for.' " We disagree.

"Claims of instructional error are reviewed de novo." *Goodwin v Northwest Mich Fair Ass'n*, 325 Mich App 129, 156; 923 NW2d 894 (2018). "Instructional error warrants reversal if the error resulted in such unfair prejudice to the complaining party that the failure to vacate the jury verdict would be inconsistent with substantial justice." *Id*. at 157 (quotation marks and citation omitted).

MCL 500.3105(1) provides, in relevant part, as follows:

> Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle . . . .

In *Griffith v State Farm Mut Auto Ins Co*, 472 Mich 521, 531; 697 NW2d 895 (2005), our Supreme Court explained that MCL 500.3105(1) "imposes two causation requirements for no-fault benefits":

> First, an insurer is liable only if benefits are "for accidental bodily injury[.]" "[F]or" implies a causal connection. "[A]ccidental bodily injury" therefore triggers an insurer's liability and defines the scope of that liability. Accordingly, a no-fault insurer is liable to pay benefits only to the extent that the claimed benefits are causally connected to the accidental bodily injury arising out of an automobile accident.

> Second, an insurer is liable to pay benefits for accidental bodily injury only if those injuries "aris[e] out of" or are caused by "the ownership, operation, maintenance or use of a motor vehicle[.]" It is not any bodily injury that triggers an insurer's liability under the no-fault act. Rather, it is only those injuries that are caused by the insured's use of a motor vehicle. [Citation omitted.]

With regard to the second causation requirement identified in *Griffith*, our Supreme Court explained that the no-fault act "provide[s] coverage only where the causal connection between the injury and the use of a motor vehicle as a motor vehicle is more than incidental, fortuitous, or 'but for.' " *Thornton v Allstate Ins Co*, 425 Mich 643, 659; 391 NW2d 320 (1986). Thus, for example, when a taxicab driver is victimized by an armed robber, he is not entitled to PIP benefits because "[t]he connection . . . between the debilitating injuries . . . and the use of the taxicab as a motor vehicle is no more than incidental, fortuitous, or 'but for.' " *Id*. at 660. The Court has thus referred to the "incidental, fortuitous, or 'but for' " causation test in ascertaining whether an injury was sufficiently connected to a particular *use* of a motor vehicle. See, e.g., *Kemp v Farm Bureau Gen Ins Co of Mich*, 500 Mich 245; 901 NW2d 534 (2017) (injuries sustained while unloading property from a parked vehicle); *Thornton*, 425 Mich 643 (injuries sustained from an armed robber). In other words, the "incidental, fortuitous, or 'but for' " test applies when a person is injured while

-8-

using a motor vehicle in a peculiar or unusual manner, such that the motor vehicle is arguably the mere location of the injury.

In this case, defendant argues that the trial court's causation instruction was erroneous because it omitted the "incidental, fortuitous, or 'but for' " language required by our Supreme Court. This argument misses the mark. As noted previously, the "incidental, fortuitous, or 'but for' " test applies when a person suffers injuries that are not clearly caused by the use of a motor vehicle as a motor vehicle. For example, in the case discussed in the trial court, *Oostdyk v Auto Owners Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued December 30, 2014 (Docket No. 317221),[3] a child was injured when he suffered a seizure on a school bus. The no-fault insurer argued that the school bus was merely the location of the injuries, and that the connection between the use of the school bus and the injuries was chance. Similarly, in *Thornton*, the taxicab driver was injured by an armed robber. Our Supreme Court explained that the connection between the use of the taxicab and the injuries was merely "incidental, fortuitous, or 'but for.' " *Thornton*, 425 Mich at 660.

Here, however, there is no dispute that the March 2017 accident in which Jackson was involved was a straightforward motor-vehicle accident. The only question at trial was whether her injuries and corresponding medical treatment arose out of, i.e., was caused by, the March 2017 accident or another accident. In such a case, the trial court properly instructed the jury that "the law in Michigan provides that a sufficient causal connection exists if the motor vehicle accident is one of the causes for her need for services, even though there may be other independent causes." First, that instruction was supported by caselaw, albeit minimal, discussing multi-cause injuries. For instance, in *Buckeye Union Ins Co v Johnson*, 108 Mich App 46; 310 NW2d 268 (1981), a mechanic was injured while repairing a truck; the injuries were apparently caused by both the maintenance itself and the negligence of the car dealership. *Id*. at 49-50. This Court held that a "sufficient causal connection" was established for the purposes of the no-fault act: "If maintenance of a motor vehicle is one of the causes [of the injury], a sufficient causal connection exists even though there are independent causes." *Id*. at 50-51. See also *Shinabarger v Citizens Mut Ins Co*, 90 Mich App 307, 313; 282 NW2d 301 (1979) ("Where use of the vehicle is one of the causes of the injury, a sufficient causal connection is established even though there exists an independent cause.").[4] Simply put, the trial court's instruction referring to "one of the causes . . . even though there may be other independent causes" is consistent with this Court's caselaw.[5]

---

[3] *Oostdyk* is not binding on this Court. See MCR 7.215(C)(1).

[4] Relatedly, "an injured party may recover if he can demonstrate that the accident aggravated a pre-existing condition." *Mollitor v Associated Truck Lines*, 140 Mich App 431, 438; 364 NW2d 344 (1985).

[5] Additionally, the comment to M Civ JI 35.02 provides that "[i]f the motor vehicle is one of the causes, a sufficient causal connection exists even though there are other independent causes." It is true that the model jury instructions, much less the comments thereto, are not full binding upon the trial court. See MCR 2.512(D)(1) ("A model jury instruction does not have the force and effect of a court rule."). Nonetheless, it was certainly reasonable for the trial court to rely upon the

-9-

Accordingly, the trial court properly instructed the jury concerning causation notwithstanding its omission of the "incidental, fortuitous, or 'but for' " language.

## III. FRAUD

Defendant argues that the trial court erred by refusing to allow it to question Jackson about her two alleged instances of fraud. We agree but conclude that reversal is not warranted.

"This Court generally reviews for an abuse of discretion a trial court's decision to admit or exclude evidence." *Bodnar v St John Providence, Inc*, 327 Mich App 203, 232; 933 NW2d 363 (2019).

"Evidence that shows bias or prejudice on the part of a witness is always relevant." *Powell v St John Hosp*, 241 Mich App 64, 72; 614 NW2d 666 (2000). "Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest. Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *People v Layher*, 464 Mich 756, 763; 631 NW2d 281 (2001) (citation omitted). "The credibility of a witness is always an appropriate subject for the jury's consideration. Evidence of a witness' bias or interest in a case is highly relevant to credibility." *People v Coleman*, 210 Mich App 1, 8; 532 NW2d 885 (1995).

Here, defendant should have at least been allowed to question Jackson about the fact that her PIP claim against defendant arising from the July 2015 accident was dismissed by another court on the basis of fraud. This was relevant to show her possible animus, bias against, or dislike of defendant—given that she had received no benefits from defendant in connection with that accident. It also is logical to infer that she possibly would exaggerate her injuries from the accident at issue as a means of retribution against defendant. By the same measure, it would undermine her credibility as a witness because it would show that she had not been truthful in closely related litigation with defendant. See MRE 608(b).

Similarly, defendant should have also been allowed to question Jackson about the fact that she failed to disclose, in a deposition, that she also had been involved in an accident about three weeks after the accident at issue. As with her fraud relating to the July 2015 accident, this instance of alleged fraud was relevant to show that she was not truthful in litigation with defendant. It further would have undermined her credibility as a witness.

Consequently, the trial court abused its discretion by ruling before trial that defendant could not question Jackson about her two alleged instances of fraud.[6] Nonetheless, despite the fact that

---

comment to M Civ JI 35.02 in the absence of any other applicable jury instruction. And that comment is consistent with the caselaw cited previously.

[6] Plaintiffs argue that the trial court did not abuse its discretion because defendant did not refuse to pay the medical bills at issue because of Jackson's alleged fraud. Rather, defendant refused to do so because of an IME. This argument, however, misses the mark because the alleged fraud was

the trial court abused its discretion, we conclude that reversal is not warranted because the error was harmless. See MCR 2.613(A).[7] Plaintiffs are correct to note that this case was almost entirely a medical dispute about whether Jackson's injuries were medically attributable to the March 2017 accident. Thus, the case hinged upon the credibility of the expert witnesses, not Jackson's credibility. Moreover, Jackson's testimony was brief and only established a few straightforward facts before she was excused as a witness, without objection from defendant. It is therefore not entirely clear from the existing record that defendant would have even asked Jackson about her alleged fraud if the trial court had ruled it could do so before trial. Simply put, given the unusual manner in which Jackson testified and was abruptly excused, it would be speculative to conclude that a new trial is warranted for this issue.

Accordingly, although the trial court abused its discretion by refusing to allow defendant to question Jackson about her alleged fraud, reversal is not warranted because the error was harmless.

## IV. MOTION FOR MISTRIAL

Defendant argues that the trial court erred when it denied defendant's motion for a mistrial after Jackson's outburst on the stand. We disagree.

"Whether to grant or deny a mistrial is within the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion resulting in a miscarriage of justice." *Veltman v Detroit Edison Co*, 261 Mich App 685, 688; 683 NW2d 707 (2004) (quotation marks and citation omitted). "A mistrial should be granted only when the error prejudices one of the parties to the extent that the fundamental goals of accuracy and fairness are threatened." *Id*. at 690-691 (quotation marks and citations omitted).

First, as explained in the discussion of Issue VII, the jury returned a verdict for less than plaintiffs' request. This fact suggests that the jury was not unduly swayed by prejudice in favor of plaintiffs. Second, Jackson's testimony lasted only about 20 minutes during the four-day trial. It was therefore not likely to overshadow the remaining presentation of evidence. Third, while the outburst undoubtedly portrayed Jackson as a sympathetic witness, she did not go so far as to assert

---

relevant to Jackson's credibility as a witness. If, for example, Jackson testified that she was able to walk normally before the March 2017 accident but only able to walk with pain immediately after the accident, her two alleged instances of fraud would have undermined the credibility of her testimony in this regard.

[7] MCR 2.613(A) provides as follows:

> An error in the admission or the exclusion of evidence, an error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice.

that she would be personally responsible for all of her medical bills if the jury did not find in favor of plaintiffs. Indeed, the jury must have been aware that she was not a party to the case, and no evidence was presented to indicate that she would be personally responsible for her medical bills. Thus, the jury was unlikely to believe that Jackson would somehow be aided if it found in favor of plaintiffs. Fourth, there is no particular reason to conclude that a curative instruction, if it had been provided by the trial court, would not have been able to cure any prejudice to defendant. See *Willett v Ford Motor Co*, 400 Mich 65, 72; 253 NW2d 111 (1977) (explaining that a mistrial is not warranted if an instruction would prevent prejudice). Consequently, and especially bearing in mind that Jackson was called as a witness by defendant, not plaintiffs, we conclude that the trial court did not abuse its discretion by denying defendant's motion for a mistrial.[8]

## V. WITNESS RECALL

Defendant argues that the trial court erred by refusing to allow it to recall its claims-adjuster, McCowan. We conclude that this issue is waived. Defendant does not cite any authority providing that the trial court was presumptively required to allow defendant to recall McCowan to testify. More importantly, defendant does not explain why it was prejudiced by the trial court's refusal to allow it to recall McCowan to testify, beyond the following sentence: "Ms. McCowan was expected to rebut testimony of those witnesses called after her testimony and to explain the billing review process."

"A party may not merely announce a position and leave it to this Court to discover and rationalize the basis for the claim," and "this Court need not address an issue that is given only cursory consideration by a party on appeal." *Eldred v Ziny*, 246 Mich App 142, 150; 631 NW2d 748 (2001) (cleaned up). Because defendant has not provided this Court with any pertinent authority or explained why it was prejudiced, we conclude that this issue is waived.

## VI. MARCH 2019 SURGERY

Defendant argues that the trial court erred by allowing plaintiff Synergy to introduce the medical bills for the March 2019 surgery as evidence of damages because the statutory 30-day period had not elapsed. We disagree.

---

[8] Defendant raises two additional arguments that will be addressed briefly. First, defendant argues that the trial court erred by not allowing it to create a record outside the presence of the jury establishing that Jackson committed fraud. This argument is meritless because there is no dispute about the underlying facts, namely, that Jackson's earlier case against defendant was dismissed on the basis of fraud, and that Jackson falsely denied in a deposition that she had not been involved in an accident after the March 2017 accident at issue. Second, defendant argues that the trial court pierced the veil of judicial impartiality under *People v Stevens*, 498 Mich 162; 869 NW2d 233 (2015). This argument is waived because it was not raised in the statement of questions presented. See *Seifeddine v Jaber*, 327 Mich App 514, 521; 934 NW2d 64 (2019). In any event, we find defendant's argument on this issue meritless.

"This Court generally reviews for an abuse of discretion a trial court's decision to admit or exclude evidence." *Bodnar*, 327 Mich App at 232.

At the time relevant to this case, MCL 500.3142(1) provided that "[p]ersonal protection insurance benefits are payable as loss accrues," and MCL 500.3142(2) provided that "[p]ersonal protection insurance benefits are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained." Further, MCL 500.3142(3) provided that "[a]n overdue payment bears simple interest at the rate of 12% per annum."[9]

This Court has explained that MCL 500.3142 provides a 30-day "legislative grace period" for a no-fault insurer to investigate a claim. See *Williams*, 250 Mich App at 267 ("[D]efendant, if it had desired to challenge or investigate the amount purportedly paid by BCBSM, could have and should have conducted some investigation of its own during the thirty-day legislative grace period to establish a lesser amount of uncoordinated benefits owed."). Moreover, under MCL 500.3142(3), "[n]o-fault penalty interest is intended to penalize an insurer that is dilatory in paying a claim." *Id*. at 265.

Here, defendant's argument is well-taken that it was unfairly blindsided by the trial court's decision to allow plaintiff Synergy to introduce evidence of the March 2019 surgery and seek damages for it. As noted in *Williams*, MCL 500.3142 provides a 30-day "legislative grace period" for a no-fault insurer to investigate a claim. Defendant clearly did not receive that 30-day grace period, given that it was informed of the claim—at the earliest—merely one day before trial, and the case proceeded to verdict about one week later. The obvious implication of the fact that benefits are not "overdue" until the 30-day "legislative grace period" has expired is that benefits are not actually due until the thirtieth day. Thus, when the jury returned a verdict in favor of plaintiff Synergy—which may have included damages for the March 2019 surgery—it resulted in a situation in which benefits became due before the thirtieth day.

However, this Court has indicated that such a situation is not prohibited by the no-fault act. In *McMillan v ACIA*, 195 Mich App 463; 491 NW2d 593 (1992), the plaintiff sued the no-fault insurer on September 6, 1986, for benefits owed as the result of a February 1984 accident. *Id.* at 465. The plaintiff prevailed at trial, but the jury did not award him the full amount of damages that he sought. *Id*. On appeal, he argued that the trial court erred by denying his motion for no-fault penalty interest. *Id.* at 467. This Court agreed in part, reasoning as follows:

> No-fault penalty interest is not available until the no-fault claimant has presented the insurer with reasonable proof of the claim and thirty days have passed without the insurer paying the claim. [MCL 500.3142.] As plaintiff concedes, the jury could have found that reasonable proof of plaintiff's claim had not been presented to ACIA until sometime during the trial. Although we cannot say with certainty at what point during the trial ACIA had reasonable proof of plaintiff's claim, reasonable proof must have been presented to ACIA by the close of evidence on

---

[9] MCL 500.3142 was amended effective June 11, 2019, a few months after trial. See 2019 PA 21. Those amendments did not change the substance of the statute.

September 8, 1989. Therefore, as ACIA concedes, plaintiff is entitled to no-fault penalty interest from October 8, 1989. [*Id*. at 467-468.]

Although *McMillan* was a relatively short opinion and only included a one-paragraph analysis of this issue, it reasonably stands for the proposition that proof of a claim for benefits can be presented during trial.[10] Further, while not expressly stated in *McMillan*, it is reasonable to infer that the jury's award of damages was at least partially based on the plaintiff's claim that was submitted to the no-fault insurer during trial. Thus, applying *McMillan* here, the trial court did not err by allowing plaintiff Synergy to introduce evidence of the March 2019 surgery and accordingly seek damages for it, even if defendant only became aware of that claim immediately before or during trial.[11]

Accordingly, we conclude that the trial court did not abuse its discretion by allowing plaintiff Synergy to introduce the medical bills for the March 2019 surgery as evidence of damages.

VII. CASE EVALUATION SANCTIONS

Defendant argues that the trial court erred by awarding plaintiffs case-evaluation sanctions.[12] We disagree.

"A trial court's decision whether to grant case-evaluation sanctions under MCR 2.403(O) presents a question of law, which this Court reviews de novo." *Van Elslander v Thomas Sebold & Assoc, Inc*, 297 Mich App 204, 211; 823 NW2d 843 (2012) (citation omitted).

MCR 2.403 provides, in relevant part, as follows:

(M) Effect of Acceptance of Evaluation.

(1) If all the parties accept the panel's evaluation, judgment will be entered in accordance with the evaluation, unless the amount of the award is paid within 28 days after notification of the acceptances, in which case the court shall dismiss the action with prejudice. The judgment or dismissal shall be deemed to dispose of all claims in the action and includes all fees, costs, and interest to the date it is entered, except for cases involving rights to personal protection insurance benefits under

---

[10] *McMillan* also reasonably stands for the proposition that introducing evidence of a claim at trial constitutes providing the insurer itself with the claim under MCL 500.3142(2).

[11] We note that defendant does not argue that plaintiff Synergy's complaint was not properly amended under MCR 2.118(C)(2), nor does defendant argue that plaintiff Synergy's attempt to recover benefits for medical services provided *after* Jackson's assignment violates MCL 500.3143, which states that "[a]n agreement for assignment of a right to benefits payable in the future is void."

[12] Although defendant nominally asserts that neither plaintiff was entitled to sanctions, the logical import of its argument is that only plaintiff Synergy was not entitled to sanctions.

MCL 500.3101 *et seq.*, for which judgment or dismissal shall not be deemed to dispose of claims that have not accrued as of the date of the case evaluation hearing.

\* \* \*

(O) Rejecting Party's Liability for Costs.

(1) If a party has rejected an evaluation and the action proceeds to verdict, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation. However, if the opposing party has also rejected the evaluation, a party is entitled to costs only if the verdict is more favorable to that party than the case evaluation.

\* \* \*

(3) For the purpose of subrule (O)(1), a verdict must be adjusted by adding to it assessable costs and interest on the amount of the verdict from the filing of the complaint to the date of the case evaluation, and, if applicable, by making the adjustment of future damages as provided by MCL 600.6306. After this adjustment, the verdict is considered more favorable to a defendant if it is more than 10 percent below the evaluation, and is considered more favorable to the plaintiff if it is more than 10 percent above the evaluation. If the evaluation was zero, a verdict finding that a defendant is not liable to the plaintiff shall be deemed more favorable to the defendant.

Here, the case-evaluation panel awarded $160,000 to plaintiff Synergy and $37,000 to plaintiff Silver Pine. Defendant rejected these awards, and the jury awarded plaintiff Synergy $127,960 for medical services and $15,239 for overdue interest, and plaintiff Silver Pine $28,400 for medical services and $2,840 for overdue interest. However, it is undisputed that once costs and pre-judgment interest were added to the verdict as required by MCR 2.403(O)(3), the resulting amounts were more than 10 percent above the respective case-evaluation awards. Thus, under MCR 2.403(O), the trial court did not err by awarding plaintiffs case-evaluation sanctions after trial.

Defendant nonetheless argues that the trial court erred by awarding sanctions because plaintiff Synergy was allowed to seek about $69,000 in damages for the March 2019 surgery, and this claim was not presented to the case-evaluation panel. Thus, defendant argues, to calculate whether sanctions should be awarded, the verdict in favor of plaintiff Synergy should be reduced by about $69,000. In such a case, plaintiff Synergy no longer received a "more favorable" verdict under MCR 2.403(O).

We acknowledge defendant's argument about the apparent incongruity of MCR 2.403 in no-fault cases. Ordinarily, when a case-evaluation award is accepted by both parties, it disposes of all claims, past, present, and future, in the action. See MCR 2.403(M)(1). But MCR 2.403(M)(1) creates an exception for PIP benefits "that have not accrued as of the date of the case evaluation hearing." In such cases, acceptance of a case-evaluation award does not dispose of future claims for PIP benefits. Thus, an injured party (or assignee) may accept a case-evaluation award and subsequently seek PIP benefits that accrue after the case-evaluation date. However, as

defendant observes, application of the MCR 2.403(M)(1) exception means that an injured party or assignee may obtain a verdict that includes not only PIP benefits that were owed before case evaluation, but also those benefits that accrue after case evaluation. When that occurs, the verdict is artificially "inflated" with respect to the case-evaluation award. In other words, while MCR 2.403 contemplates that the claims submitted to the case-evaluation panel will be similar or identical to the claims submitted to the jury, or at least that the claims submitted to the jury will be considered by the case-evaluation panel, in no-fault cases where PIP benefits continue to accrue, the claims submitted to the jury will be greater than the claims submitted to, or perhaps even considered by, the case-evaluation panel. Thus, a prevailing plaintiff will find it artificially easier to recover case-evaluation sanctions than in an ordinary case.

With that in mind, such concerns are irrelevant to this case. Defendant acknowledges that plaintiff Synergy submitted a claim for about $95,000 to the case-evaluation panel arising from a December 8, 2017 knee surgery, but it chose not to present that claim to the jury. Thus, although plaintiff Synergy was able to add the approximately $69,000 shoulder surgery to the claims presented to the jury, it also subtracted the approximately $95,000 knee surgery. Consequently, the "inflation" concerns discussed previously were not clearly present here.

Accordingly, we conclude that the trial court did not err by awarding case-evaluation sanctions under MCR 2.403(O).

## VIII. CLOSING ARGUMENT

Defendant argues that the trial court erred by refusing to grant its motion for a new trial on the basis that plaintiffs' counsel made the irrelevant and unsupported argument that it was trying to "stick" Jackson with the medical bills.

"A trial court's decision to grant or deny a motion for a new trial under MCR 2.611 is reviewed for an abuse of discretion." *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 761; 685 NW2d 391 (2004).

"When reviewing asserted improper comments by an attorney, we first determine whether the attorney's action was error and, if it was, whether the error requires reversal." *Hunt v Freeman*, 217 Mich App 92, 95; 550 NW2d 817 (1996). "An attorney's comments usually will not be cause for reversal unless they indicate a deliberate course of conduct aimed at preventing a fair and impartial trial." *Id*. "Reversal is required only where the prejudicial statements of an attorney reflect a studied purpose to inflame or prejudice a jury or deflect the jury's attention from the issues involved." *Id*. That is, an attorney may not seek "to divert the jurors' attention from the merits of the case and to inflame the passions of the jury." *Badalamenti v William Beaumont Hosp-Troy*, 237 Mich App 278, 292; 602 NW2d 854 (1999).

Here, the assertion that defendant was trying to "stick" Jackson with the medical bills was unrelated to the merits of the case and could only serve to inflame the passions of the jury against

the insurance company. Moreover, it was completely unsupported by the evidence at trial.[13] Defendant properly objected to this assertion, but the trial court apparently overruled the objection, stating that "[t]hat's what argument is." The trial court was erroneous. The purpose of closing argument is not to fabricate facts that were not specifically disproven at trial. Rather, "[t]he purpose of closing argument is to allow attorneys *to comment on the evidence* and to argue their theories of the law to the jury." *People v Finley*, 161 Mich App 1, 9; 410 NW2d 282 (1987) (emphasis added). The trial court should have sustained the objection and perhaps even offered a curative instruction to the jury.

Nonetheless, we conclude that a new trial is not warranted for two reasons. First, we have explained that reversal is typically warranted in such cases when counsel's arguments reflect "a deliberate course of conduct" in inflaming the passions of the jury. See *Hunt*, 217 Mich App at 95. The erroneous statement during closing argument was isolated and did not reflect a pattern by plaintiffs' counsel of trying to convince the jury that defendant was trying to leave Jackson with the medical bills, force her into bankruptcy, and so forth. Indeed, once defendant objected, plaintiffs' counsel moved on to a different argument without belaboring the point. Second, the jury did not award plaintiffs the full amount of damages that they requested, which suggests that the jury was not necessarily swayed by prejudice. In other words, the fact that the verdict was not excessive indicates that the jury did not act on prejudice. Compare *Gilbert*, 470 Mich at 770 (explaining that "the verdict . . . excessiveness may be attributed to the effect of plaintiff's efforts to cause the jury to act on passion and prejudice"). Simply put, while plaintiffs' counsel's "stick" statement during closing argument was improper and the trial court failed to at least sustain the objection, these facts do not bear the other hallmarks recognized by Michigan courts which typically warrant reversal.[14]

Accordingly, we conclude that the trial court did not abuse its discretion by refusing to grant a new trial notwithstanding that plaintiffs' counsel made the irrelevant and unsupported argument that defendant was trying to "stick" Jackson with the medical bills.

### IX. MOTION FOR NEW TRIAL OR REMITTITUR

---

[13] Plaintiffs argue that counsel "was simply stating the facts" and making "the obvious point" when he asserted that Jackson would be personally responsible for the medical bills if the jury did not find in favor of plaintiffs. This is questionable at best. We cannot locate any evidence in the trial record to support the notion that Jackson would be personally responsible for the medical bills if plaintiffs did not prevail. Indeed, plaintiffs concede that no evidence was presented on that matter. Moreover, the respective assignments of rights that were attached to plaintiffs' complaints do not clearly, or even ambiguously, provide that Jackson remains responsible if plaintiffs could not successfully pursue PIP benefits from defendant.

[14] We note that defendant also argues that a new trial is warranted because plaintiffs' counsel vouched for Jackson's credibility during his closing argument. This argument is waived because it was not raised in the statement of questions presented. See *Seifeddine*, 327 Mich App at 521.

Defendant argues that the trial court abused its discretion when it denied defendant's motion for a new trial or remittitur, particularly where it did not allow defendant to establish an oral record in support of the motion. We disagree.

This Court reviews a trial court's decision on a motion for a new trial for an abuse of discretion. *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 302 Mich App 7, 21; 837 NW2d 686 (2013).

MCR 2.611 provides, in relevant part, as follows:

(A) Grounds.

(1) A new trial may be granted to all or some of the parties, on all or some of the issues, whenever their substantial rights are materially affected, for any of the following reasons:

(a) Irregularity in the proceedings of the court, jury, or prevailing party, or an order of the court or abuse of discretion which denied the moving party a fair trial.

(b) Misconduct of the jury or of the prevailing party.

(c) Excessive or inadequate damages appearing to have been influenced by passion or prejudice.

(d) A verdict clearly or grossly inadequate or excessive.

(e) A verdict or decision against the great weight of the evidence or contrary to law.

(f) Material evidence, newly discovered, which could not with reasonable diligence have been discovered and produced at trial.

(g) Error of law occurring in the proceedings, or mistake of fact by the court.

(h) A ground listed in MCR 2.612 warranting a new trial.

* * *

(E) Remittitur and Additur.

(1) If the court finds that the only error in the trial is the inadequacy or excessiveness of the verdict, it may deny a motion for new trial on condition that within 14 days the nonmoving party consent in writing to the entry of judgment in an amount found by the court to be the lowest (if the verdict was inadequate) or highest (if the verdict was excessive) amount the evidence will support.

* * *

-18-

(F) Ruling on Motion. In ruling on a motion for a new trial or a motion to amend the judgment, the court shall give a concise statement of the reasons for the ruling, either in an order or opinion filed in the action or on the record.

With respect to the motion for a new trial, defendant argues that it was necessarily an abuse of discretion for the trial court to deny its motion without allowing it to create an oral record. However, defendant has provided no authority for that proposition. Indeed, there is nothing in MCR 2.611 that requires a trial court to entertain oral arguments on a motion for a new trial. MCR 2.611(F) simply requires the trial court to provide reasons for its ruling, and it did so—specifically, by stating that the issue concerning the testimony of Posch was waived and that the remaining issues had already been decided. We therefore conclude that the trial court did not abuse its discretion in this regard.

With respect to the motion for remittitur, defendant offers the following three arguments. First, that the damages verdict to plaintiff Synergy should have been reduced by about $69,000 to account for the improperly submitted claim for the March 2019 surgery. Relatedly, defendant, argues, the overdue-interest verdict should have been reduced from $15,239 to $7,068.23 to account for the proportional reduction in the damages verdict. We disagree. As noted previously, under *McMillan*, the trial court properly allowed plaintiff Synergy to submit that claim to the jury. Further, concerning the overdue-interest verdict, it is speculation to conclude that the jury awarded overdue interest on that claim. And we note that plaintiffs' counsel, during closing argument, expressly disavowed interest on that claim:

> So the amount of interest that we're gonna ask for for Silver Pine is $9,593. The amount of the interest for Synergy, $18,578.31. The reason that the Synergy is much lower . . . is because Ms. Jackson-Davis just had the surgery on her shoulder. It's been billed. We showed you the bill, but it hasn't been more than 30 days since they received it, so we're not asking for interest on that. . . .

Second, defendant argues that the verdict to plaintiff Silver Pine should have been reduced by $15,900, which was the amount that it originally billed for MRI's to Jackson's knees and brain. According to defendant, no evidence was submitted at trial to support the necessity of these MRI's. Defendant may be correct. However, the jury did not return specific findings detailing its verdicts in favor of plaintiffs, so it is impossible to determine whether the jury verdict for plaintiff Silver Pine in the amount of $28,400 included the $15,900 now challenged by defendant. "[A] trial court, in making a decision on remittitur, . . . should be limited to *objective* considerations relating to the actual conduct of the trial or to the evidence adduced." *Palenkas v Beaumont Hosp*, 432 Mich 527, 532; 443 NW2d 354 (1989) (emphasis in original). Because defendant does not dispute that the $28,400 verdict in favor of plaintiff Silver Pine was supported by the evidence, and because the jury did not return a special-verdict form detailing its verdict in this regard, it is impossible for this Court to determine that remittitur of $15,900 is warranted.

Third, and finally, defendant argues as follows:

> Finally, plaintiff submitted two spreadsheets for costs. They were identified as being for Synergy Spine **(Exhibit ZZ).** Upon inspection, they were duplicate

-19-

charges. Thus remittitur in the amount of those costs of $7,028.28 is also appropriate.

It is not clear what defendant is arguing here. Exhibit ZZ is apparently one of the documents that plaintiffs attached to their May 21, 2019 motion for entry of judgment and taxable costs. It is essentially an itemized list of what appears to be the costs incurred by plaintiffs' counsel during this litigation. If so, and assuming that defendant is correct that plaintiffs submitted duplicate charges, remittitur is not the appropriate request because the costs were assessed post-trial, not from the jury verdict. See *Pippen v Denison, Division of Abex Corp*, 66 Mich App 664, 674; 239 NW2d 704 (1976) ("Remittitur is the procedural process by which a verdict of the jury is diminished by subtraction."). Further, defendant's scant argument in this regard is an illustration of the principle that "it is not sufficient for a party simply to announce a position and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Clay v Doe*, 311 Mich App 359, 365 n 3; 876 NW2d 248 (2015) (cleaned up).

Accordingly, we conclude that the trial court did not abuse its discretion when it denied defendant's motion for a new trial or remittitur.

## X. CONCLUSION

There were no errors warranting relief. Accordingly, we affirm.

/s/ Michael J. Riordan
/s/ Douglas B. Shapiro

-20-